Myrtle Rauch, plaintiff, v. Edmund J. Senecal, d/b/a Senecal Lumber Company, appellant, American Radiator & Standard Sanitary Corporation and Wigman Company, defendants-appellees, Cy-Gas Company et al., defendants, and Texas Natural Gasoline Corporation, cross-defendant.

No. 50470.

488

January 9, 1962.

Hutchison, Hurst & Duggan, of Sioux City, for appellant.

Stilwill & Wilson, of Sioux City, for appellee American Radiator & Standard Sanitary Corporation.

Shull, Marshall, Mayne, Marks & Vizintos, of Sioux City, for appellee Wigman Company.

Bruce A. Crary and W. W. Huff, both of Sioux City, for plaintiff, Myrtle Rauch.

Sifford & Wadden, of Sioux City, for defendant Cy-Gas Company.

Shull, Marshall, Mayne, Marks & Vizintos, of Sioux City, and Herbert W. Bails, of Sloan, for defendants Maurice Longval and Harry Longval, d/b/a Longval Bros. Hardware.

Whicher & Davis, of Sioux City, for defendant Leo Beeson.

Harper, Gleysteen & Nelson, of Sioux City, for cross-defendant, Texas Natural Gasoline Corporation.

THOMPSON, J.—The contesting parties here are three defendants in a previous case entitled Rauch v. American Radiator & Standard Sanitary Corp., which appears in the records of this court in 252 Iowa 1, 104 N.W.2d 607. This action was brought by the plaintiff against Edmund J. Senecal, hereinafter known as Senecal; American Radiator & Standard Sanitary Corporation, hereinafter known as American; and Wigman Company, hereinafter known as Wigman. The plaintiff in the first suit claimed damages against these defendants and others because of injuries sustained from the explosion of a water heater. The case was submitted to a jury, which returned its verdict against American and in favor of Senecal and Wigman. The material facts are stated in our opinion there and will not be repeated here.

A cross-petition had been filed by Senecal against American and Wigman, in which it was alleged that the negligence causing plaintiff's injuries was the proximate and primary act of Wigman and American; that Senecal had given notice of the suit to Wigman and American and made demand on them that they appear and defend the action for Senecal, which demand was refused. The prayer of the cross-petition was this: "Wherefore, the defendant, Edmund J. Senecal, the cross-petitioner herein, prays that in the event judgment be entered against him upon the plaintiff's Recast Petition, that he have judgment over against the defendant, Wigman Company, a corporation and American Radiator & Standard Sanitary Corporation for indemnity or for contribution and that he recover costs therefore plus a reasonable fee for his attorney for defense therein by having judgment entered therefor."

Trial of the issues raised by the cross-petition was deferred until after the final determination of the main case. In that case the jury found for Senecal and Wigman as against the plaintiff's claim, but held American liable. Judgments

were entered accordingly, and affirmed on appeal to this court.
The cross-petition of Senecal then came on for hearing, with
the result that the trial court adjudged Wigman and American
not liable for Senecal's costs and attorney fees incurred in de-
fending the first action. Senecal appeals.

■ ■I. There is considerable doubt whether Senecal's prayer
as stated in his cross-petition entitles him to any recovery under
the circumstances. A fair interpretation seems to indicate that
he asked judgment over against Wigman and American only
in the event judgment was entered against him on the plain-
tiff's petition. No judgment was so entered; and it is elemen-
tary that no more relief can be granted than is requested. The
prayer of the pleading necessarily measures the recovery that
may be awarded. However, Senecal asserts the proper inter-
pretation of the prayer is that he asked recovery over for costs
and attorney fees regardless of the outcome of plaintiff's claim
against him. We have decided to determine the case on this
basis without making a final determination as to the correct
construction of the prayer.

■ ■ II. It is apparent that Senecal may not recover
against Wigman. Wigman was adjudged free from negligence
in the first action. He was held not liable in tort to Rauch.
There was no wrong committed by Wigman for which Senecal
was compelled to defend. The liability of an indemnitor to
an indemnitee is based upon the theory that the indemnitor
must have been the "active perpetrator of the wrong." Rozmajzl
v. Northland Greyhound Lines, 242 Iowa 1135, 1143, 49 N.W.
2d 501, 506. Since Wigman was adjudged to have perpetrated
no wrong, there is no possible basis for recovery by Senecal
against it.

III. The situation is different as against American. It has
been adjudged to have perpetrated a wrong against the plain-
tiff, Rauch. The question for decision therefore becomes
whether Senecal is entitled to indemnity against it; not in-
demnity for the recovery of any judgment against him for neg-
ligence, because there is none; but solely for attorney fees in-
curred in proving his nonliability.

The general rule is that attorney fees are not recoverable by a successful litigant against his adversary. Turner v. Zip Motors, Inc., 245 Iowa 1091, 1098, 65 N.W.2d 427, 431, 45 A. L. R.2d 1174; Boardman v. Marshalltown Grocery Co., 105 Iowa 445, 451, 75 N.W. 343, 345. However, there are certain exceptions. If through no fault of his own, A is involved in litigation with B because of the tort of C, he may recover his expense so incurred from C. Turner v. Zip Motors, Inc., supra, loc. cit. 245 Iowa 1098, 65 N.W.2d 431, 45 A. L. R.2d 1174, 1181. But if A is defending, in whole or in part, his own alleged tort, he may not recover indemnity from another who may also have been claimed, or adjudged, to have also been guilty of tortious conduct.

The correct rule is thus stated in Inhabitants of Westfield v. Mayo, 122 Mass. 100, 109, 23 Am. Rep. 292, 298: "If a party is obliged to defend against the act of another, against whom he has a remedy over, and defends solely and exclusively the act of such other party, and is compelled to defend no misfeasance of his own, he may notify such party of the pendency of the suit and may call upon him to defend it; if he fails to defend, then, if liable over, he is liable not only for the amount of damages recovered, but for all reasonable and necessary expenses incurred in such defense."

This rule was quoted with approval and followed in Fidelity & Casualty Co. of New York v. Northwestern Telephone Exchange Co., 140 Minn. 229, 233, 167 N.W. 800, 802. It remains to be seen whether Senecal was defending his own alleged negligent acts or solely those of American. It is Senecal's claim that American had the primary responsibility and the fault was primarily chargeable to it; and that Senecal was involved only because he was the immediate supplier of the alleged defective valve which caused the explosion and the plaintiff's injuries.

We examine the charges of negligence against Senecal in the original suit. The same allegations of negligence were leveled against Senecal, Wigman and American jointly. Among them we find these: "c. In failing to inform persons using the heater of its dangerous safety characteristics when operated

according to the directions of the defendants, and of the circumstances under which the said heater would be dangerous to such persons," and "e. In failing to properly inspect the heater and replacement safety valve before sale to determine whether the safety device designed to prevent the escape of gas in explosive quantities would fail to function."

It is evident the charge of failure to warn of the dangerous safety characteristics of the heater and the circumstances under which it would be dangerous to persons using it was a direct charge of primary negligence against Senecal. It may also have applied to Wigman and American, a question we do not determine. But Senecal was the direct supplier; he had direct contact with the purchaser and certainly at least as good an opportunity to warn against any dangers as Wigman, the jobber from whom he bought, or American, which supplied Wigman. We are not concerned with the question of whether this was a good allegation of negligence, or whether it was ultimately submitted to the jury. The question of importance is, was this a direct allegation of his own negligence which the defendant Senecal was defending? Clearly it was; and that he may have defended it successfully is not material.

So with the failure to inspect. In Constantine v. Scheidel, 249 Iowa 953, 955, 956, 90 N.W.2d 10, 12, an action for contribution or indemnity by a building owner who had been compelled to pay damages for injuries suffered by a window washer, against tenants of the building, we held the duty of each to inspect was a like duty. The facts were that the window washer was injured by a fall from an upper story of the building because a defective fastening gave way. In this case we said: "It must, therefore, be concluded that both plaintiffs and defendants in this matter failed to perform a like duty to the injured window washer * * *." See also Stupka v. Scheidel, 244 Iowa 442, 453, 454, 56 N.W.2d 874, 880; Chicago & North Western Ry. Co. v. Chicago, Rock Island & Pacific R. Co., 179 F. Supp. 33, 61, 63; Union Stock Yards Co. v. Chicago, Burlington & Quincy R. Co., 196 U. S. 217, 228, 25 S. Ct. 226, 229, 49 L. Ed. 453, 2 Ann. Cas. 525.

Senecal relies much on Coca Cola Bottling Co. v. Lowe, Ky., 275 S.W.2d 47. Here a sign placed by the defendant Coca Cola Company on the outside of the store of defendants Schneiders fell and injured the plaintiff. On trial of plaintiff's claim for damages the court directed a verdict for Schneiders. Damages were awarded against the Coca Cola Company, and Schneiders were allowed their attorney fees and expenses on cross-petition against Coca Cola. The Court of Appeals of Kentucky affirmed, saying the trial court might well have directed a verdict against Schneiders as well as against the Coca Cola Company on the theory of res ipsa loquitur; but in any event the negligence of the Coca Cola Company was primary and active while that of Schneiders was secondary and passive. This in no way aids Senecal here; we have pointed out that in some respects at least he was defending his own primary negligence. The case may be taken as authority for the proposition that a defendant who is found guilty of no negligence may recover his expenses, including attorney fees, from a joint defendant who has been adjudged negligent; although this is somewhat weakened by the court's statement that it appeared the defendant for whom a verdict was directed by the court was in fact liable under the res ipsa theory. We are not prepared to say that a defendant who is found not liable in negligence may recover his expenses of litigation by way of indemnity against a codefendant who has been found liable. Our holding is confined to the proposition that a defendant who successfully defends against his own primary negligence, in part at least, may not recover his expenses as indemnity against a codefendant who is found liable for negligence. This is so even though some charges of negligence were made, and defended, as to which the liability of the first defendant was secondary only to that of the second defendant. As to the matter of failure to warn, we have pointed out that Senecal had an opportunity, the best opportunity, in fact, to give warning to the purchaser of the defective valve, of the dangerous characteristics of the water heater; and he was defending this charge of negligence, even though ultimately it was not submitted to the jury.

.

Likewise as to the failure to inspect. While it might be contended Senecal relied upon American to make the inspection and to sell only a product free from defects, the allegation of negligence here was directed against him as well as against the other defendants. He testified: "I took off the original safety pilot valve from the heater and put on another one which I got from Wigman Company. The valve came in a sealed box." The record shows that American purchased the valve from Titan Manufacturing Company, and in turn sold it to Wigman Company. Neither American nor Wigman took the valve from the sealed box, and had no opportunity to inspect it except by opening the box. Whether either or both should have done so is not decisive here. Senecal did in fact open the box, and had the valve in his possession and installed it. If it was defective, as the ultimate decision in the first case determines, it should have been apparent to him and he could not rely wholly on an assumption that it had been properly manufactured, or inspected, by American or Wigman so that it was free from defects. He was charged with failure to inspect, and in defending the original case he was defending a direct charge of primary negligence against himself. For the expense of this he is not entitled to recover against American.

The general rule is that "where one is compelled to pay what another in justice ought to pay, the former may recover from the latter the sums so paid." 42 C. J. S., Indemnity, section 20, page 594. Conversely, it would seem to follow that when one is not compelled to pay what another should pay, he may recover nothing. However, the question need not be decided in the present case, and we do not do so.

IV. It also appears that the attorney fees sought to be recovered here from American were, in part at least, incurred in prosecuting the claim against Wigman. At least the record shows that the fees are "for services rendered in the conduction of this litigation." This is the testimony of Senecal's attorney to whom the fees are presumably due. Part of the litigation was the prosecution of the cross-petition against Wigman. How much of the total amount claimed was due to this litigation the

record does not show. Certainly American could not be held liable for this expense.

We conclude that the judgment of the trial court was right. Costs will be taxed against Senecal; except that Wigman and American will be allowed no more than $1.50 per page for printing their briefs and arguments.—Affirmed.

All JUSTICES concur except BLISS, J., not sitting.