332 F.2d 959
 Thomas Wayne LEINGANG, individually and Thomas Wayne Leingang, as Administrator of the Estate of Joan C. Leingang, Deceased, Plaintiff,
v.
BOTTLED GAS CORPORATION, an Iowa Corporation, Felton D. Jones, and Warren Petroleum Corporation, a Delaware Corporation, Defendants.
WARREN PETROLEUM CORPORATION, a Delaware Corporation, Defendant and Third-Party Plaintiff-Appellee,
v.
MID-AMERICA PIPELINE COMPANY, a Delaware Corporation, Third-Party Defendant-Appellant.
 No. 14468.
 United States Court of Appeals Seventh Circuit.
 June 18, 1964.
 
 Elliott K. McDonald, McDonald, McDonald & Carlin, Davenport, Iowa, for Mid-America Pipeline Co., third party defendant-appellant.
 Virgil Bozeman, Donald A. Henss, Bozeman, Neighbour, Patton & Henss, Moline, Ill., for Warren Petroleum Corp., defendant and third party plaintiff-appellee.
 Before HASTINGS, Chief Judge, and CASTLE and MAJOR, Circuit Judges.
 MAJOR, Circuit Judge.
 
 
 1
 This appeal stems from an action brought by Thomas Wayne Leingang, individually, for personal injuries, and as administrator of the estate of Joan C. Leingang, deceased, for her wrongful death, which injuries and death were caused by an explosion of liquid petroleum gas in the basement of their home. In the original complaint, the defendants (named in the caption) were charged jointly, and in some instances severally, with acts of negligence which caused the explosion. In the course of the proceeding, defendant Warren Petroleum Corporation (Warren) filed its third party complaint against Mid-America Pipeline Company (Mid-America), in which it sought indemnification for any damages which might be awarded against Warren. On July 22, 1963, a settlement agreement, entered into by all the parties, was approved by the Court. The agreement terminated the litigation other than that it reserved the right, if any, of Warren as third party plaintiff to attorney fees against Mid-America.
 
 
 2
 Mid-America filed a motion, which was denied, to dismiss the third party complaint, which had not been disposed of by the settlement agreement. Warren filed a motion, which was allowed, for leave to amend such complaint, in which for the first time it sought a judgment against Mid-America for attorney fees in the amount of $4,878.83. From a judgment awarding such fees, Mid-America appeals.
 
 
 3
 The above sketchy outline of the facts is only for the purpose of developing the basis upon which the judgment in issue was entered. The essence of the question for decision is whether the attorneys for Warren were entitled to be indemnified by Mid-America, on the theory that their services were rendered on behalf and in the interest of Mid-America.
 
 
 4
 The case was tried by the Court (Judge Frederick O. Mercer) without a jury, who rendered a memorandum opinion (not published) with which we find ourselves in disagreement. Such being the case, we feel obliged to relate the facts in some detail, even though they are not in dispute.
 
 
 5
 In the original complaint, as found by the District Court, it is alleged that Warren (1) improperly installed the cylinders of gas in plaintiff's home; (2) failed to inspect the installation thereof; (3) failed to inspect the gas system leading to plaintiff's heater to determine that it was safe, and (4) failed to place a sufficient amount of malodorant in the gas in order that its leaking from the system might be detected by the sense of smell.
 
 
 6
 On May 4, 1962, after the filing of the complaint, Warren's attorneys by letter notified Mid-America of the suit, in which they expressed the view that plaintiff's only claim of any substance was the alleged failure to odorize the gas properly. The letter in part stated:
 
 
 7
 "Under these circumstances, it is the position of Warren Petroleum Corporation that if any recovery is obtained against Warren Petroleum Corporation as defendant in this cause, it will be because of the failure of Mid-America Pipeline Company to comply with its contractual obligation with Warren Petroleum Corporation to provide the proper amount of malodorant in the liquid petroleum gas which was delivered to Bottled Gas Corporation. [Italics supplied.]"
 
 
 8
 Upon Mid-America's refusal to defend, Warren filed its answer to the complaint, in which it denied all allegations of negligence. At the same time Warren filed a third party complaint against Mid-America alleging, among other things, that Warren delivered gas to Mid-America at points in Oklahoma and Texas for transportation by Mid-America to the latter's Iowa City, Iowa, terminal; that Mid-America made deliveries of the gas at that terminal to Warren's customers, including Bottled Gas; that all such shipments were delivered to Mid-America under a tariff and agreement with Mid-America which required the latter to odorize all gas to Warren's specifications before any such gas was delivered by Mid-America at its terminal into tank cars or tank trucks for Warren's customers.
 
 
 9
 The sixth paragraph of the third party complaint alleged:
 
 
 10
 "That while the defendant and third party plaintiff, Warren Petroleum Corporation, fully believes that the third party defendant, Mid-America Pipeline Company, did in fact odorize the liquid petroleum gas in accordance with instructions received by it from Warren Petroleum Corporation, if the plaintiff in this cause shall be able to prove to the contrary and show that the liquid petroleum gas which exploded and caused the injury to the plaintiff herein was in fact not properly odorized, then in that event any liability which may ensue to the defendant, Warren Petroleum Corporation, will have been due to the failure of Mid-America Pipeline Company to properly perform its obligations with respect to said odorization. [Italics supplied.]"
 
 
 11
 The complaint prayed for judgment against the third party defendant, Mid-America, "for all sums that may be adjudged against defendant, Warren Petroleum Corporation, in favor of the plaintiff in this cause. [Italics supplied.]"
 
 
 12
 Mid-America answered the Warren complaint and adopted the answer of Warren to the original complaint. The answer also alleged:
 
 
 13
 "This third-party defendant admits that one of the grounds for cause of action against the Warren Petroleum Company is grounded upon their failure to insert into the liquid petroleum gas which it sold to the defendant, Bottled Gas Corporation, a sufficient amount of malodorant to warn the plaintiff and the plaintiff's decedent of the presence of a dangerous concentration of liquid petroleum gas, but states that there were other alleged grounds of negligence against the Warren Petroleum Company in the complaint for which this third party defendant could not possibly be responsible. [Italics supplied.]"
 
 
 14
 The answer further alleged that every tank truck load of Warren gas delivered by Mid-America to Bottled Gas had been malodorized by Mid-America in accordance with Warren's specifications.
 
 
 15
 On July 18, 1962, plaintiff amended his original complaint wherein the alleged acts of negligence against Warren were limited to a lack of sufficient odorant in the gas. To this amended complaint Mid-America was made a defendant and charged in the same manner as Warren. Warren then filed a second third party complaint against Mid-America, and the latter by its answer specifically denied that it failed to malodorize the gas.
 
 
 16
 The settlement agreement entered into by all parties on July 22, 1963, does not disclose the terms and conditions of settlement other than the preservation of Warren's rights, if any, against Mid-America for attorney fees. However, referring to this settlement, Warren in its third party complaint alleged:
 
 
 17
 "That in the ultimate settlement of this cause, Mid-America Pipeline Company paid the sum of $10,000 as its share of the final payment of $70,000 by all of the parties in this cause and the defendant Warren Petroleum Corporation, made no payments in this cause."
 
 
 18
 It is not disclosed by the settlement agreement or otherwise on what theory Mid-America paid the sum of $10,000 "as its share of the final payment of $70,000 by all of the parties." Certainly no liability on the part of Mid-America was adjudicated and at no time, by its pleadings or otherwise, did it admit liability. It conceded that it had a duty to odorize all gas shipped by Warren and delivered by Mid-America, but alleged that its duty in that respect had been discharged in accordance with instructions received from Warren.
 
 
 19
 In our judgment, the issue before us must be decided upon the status of the litigation as it existed July 18, 1962, when the amended complaint was filed, followed by the filing of the second third party complaint. We do not understand from Judge Mercer's opinion that he thought otherwise, and plaintiff in his brief here does not argue differently. It appears to have been the reasoning of the District Court, as argued here by plaintiff, that Mid-America by its answer to the first third party complaint and by its adoption of Warren's answer to the original complaint eliminated all charges of negligence against Warren, other than that Warren had failed to odorize the gas properly, and that Warren was thereby relieved of any duty to defend. This reasoning is fallacious. Warren's duty in this respect was solely dependent upon the allegations of negligence directed at it by plaintiff. Would Warren, if the case had gone to trial at that time have been content to rely on the fact that Mid-America had joined in Warren's denial of the negligence alleged in the complaint? Certainly it would not, as it had no right to rely upon Mid-America to defend it from acts of negligence alleged solely against it. The point of prime importance is that Warren was charged with numerous acts of negligence at the time it called upon Mid-America to defend. The fact that Warren was relieved from liability by the settlement agreement is of no importance. In Rauch v. Senecal, 253 Iowa 487, 112 N.W.2d 886 (hereinafter discussed), the Court in a similar situation stated (page 889):
 
 
 20
 "We are not concerned with the question of whether this was a good allegation of negligence, or whether it was ultimately submitted to the jury. The question of importance is, was this a direct allegation of his own negligence which the defendant Senecal was defending? Clearly it was; and that he may have defended it successfully is not material."
 
 
 21
 In any event, it cannot be reasonably controverted but that a portion, perhaps a large portion, of the legal services rendered, for which a fee is sought, were on behalf of Warren and not Mid-America. Each had its attorneys who evidently were looking after the interests of their own clients.
 
 The District Court in its opinion stated:
 
 22
 "* * * the only allegation of negligence which could possibly attach to Warren is the alleged failure to properly odorize the gas which was delivered to Leingang. Under the applicable law, Mid-America was duty bound to save Warren harmless from any such negligent failure. It was equally duty bound to defend Warren against that allegation."
 
 
 23
 That statement ignores the numerous other acts of negligence which plaintiff alleged against Warren in his original complaint, which Mid-America was by Warren in its letter of May 4, 1962 called upon to defend. In making the quoted statement it may be that the Court had in mind the situation which later developed by reason of plaintiff's amended complaint but, if so, this overlooks the fact that Mid-America was called upon to defend the charge contained in the original complaint. In any event, as shown, a portion of the services for which fees are sought was rendered prior to the filing of the amended complaint.
 
 
 24
 The parties on brief appear to acquiesce in the trial Court's conclusion that the issue of Warren's right to indemnity is to be determined by the law of Iowa, wherein Mid-America's contract was to be performed. Warren, as did the trial Court, in support of its right to recover cites Rauch v. Senecal, 253 Iowa 487, 112 N.W.2d 886; Constantine v. Scheidel, 249 Iowa 953, 90 N.W.2d 10, 12, 13; Best v. Yerkes, 247 Iowa 800, 77 N.W.2d 23, 26, 27, 60 A.L.R.2d 1354; Turner v. Zip Motors, Inc., 245 Iowa 1091, 1098, 65 N. W.2d 427, 431, 45 A.L.R.2d 1174, and Chicago Rock Island & P. R. Co. v. Chicago & N. W. Ry. Co., 280 F.2d 110, 114 (8 Cir.).
 
 
 25
 The District Court relied upon Rauch, the latest of the Iowa cases, which it is tacitly conceded by the parties is controlling here. We think it unnecessary to state the facts of that case, although they are quite similar to those here, because we agree with Judge Mercer's appraisal insofar as it pertains to the indemnity rule of Iowa. Concerning the case, Judge Mercer stated:
 
 
 26
 "* * * the court stated the rule to be that if a party is obliged to defend against the act of another, which involves no misfeasance on his part, he may demand that the other defend the suit, and if the other fails to defend and is liable over, he is liable for all reasonable and necessary expenses incurred in such defense. On the other hand, if such party is defending in part, his own tort, he cannot claim indemnity from another who is also guilty or claimed to be guilty of tortious conduct. [Italics supplied.]"
 
 
 27
 For reasons shown, it cannot be held — certainly not under the allegations of the original complaint — that there was no misfeasance alleged against Warren. In any event, the conclusion is inescapable that Warren was defending in part its own alleged tort.
 
 The judgment appealed from is
 
 28
 Reversed.