**Donald M. BUNCE and Vernetta R. Bunce, Plaintiffs,**

v.

**SKYLINE HARVESTORE SYSTEMS, INC. and A.O. Smith Harvestore Products, Inc., Defendants.**

**A.O. SMITH HARVESTORE PRODUCTS, INC., Cross-Petitioner-Appellee,**

v.

**SKYLINE HARVESTORE SYSTEMS, INC., Appellant.**

No. 83–716.

Supreme Court of Iowa.

May 16, 1984.

John S. Pieters of Pieters & Pieters, Waterloo, for appellant.

Jeff H. Jeffries of Hopkins & Huebner, Des Moines, for cross-petitioner-appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, LARSON, and CARTER, JJ.

LARSON, Justice.

Donald M. Bunce was injured when his hand was caught in a machine being used to free corn bridging in his silo. He sued A.O. Smith Harvestore Products, Inc., manufacturer of the silo, and Skyline Harvestore Systems, Inc., which was A.O. Smith's local dealer. A.O. Smith obtained a directed verdict, and trial proceeded only against Skyline on the basis of its employees' negligence. By agreement the indemnity issue was severed and reserved for later disposition by the court. The jury returned a verdict against Skyline, and judgment was entered. No appeal was taken from that judgment. This appeal concerns only A.O. Smith's cross-petition against Skyline to recover its costs of defense in Bunce's suit. A.O. Smith relied on both an indemnifying agreement between it and Skyline and general common-law principles of indemnity. The district court ruled that A.O. Smith was entitled to indemnity on both theories, and Skyline appealed. We affirm on the contract ground and therefore do not reach the issue of indemnity under general principles of tort law.

A.O. Smith manufactures feed storage facilities and automated feeding equipment. Skyline entered into a "Dealer Sales and Service Agreement" with A.O. Smith whereby Skyline operated as an independent dealer for the purpose of "purchase, resale, installation and service of the Harvestore Structures, Unloaders and Accessories" made by Smith. Bunce was injured while Skyline's employees were attempting to dislodge corn bridged in a Harvestore structure on his farm. The injury was caused when Bunce's hand became entangled in a corn drill being used by the Skyline workmen. The corn drill was designed and owned by Skyline and had been constructed for it by another manufacturer. A.O. Smith had nothing to do with the design, manufacture or sale of the drill, and at the time of the incident, only Skyline's employees were on the Bunce farm.

The agreement between Skyline (Dealer) and A.O. Smith (AOSHPI) provided, in part:

Dealer shall install and service the products covered by this agreement. Such installation and service shall conform to the specifications and standards of quality established by AOSHPI and Dealer shall perform such tests as may be developed from time to time to maintain quality in such installations or service. *Dealer shall be responsible for and indemnify and hold AOSHPI harmless with respect to any defects in workmanship relating to any such installation or service, including any correction or repair thereof.*

(Emphasis added.) The dealership agreement also apportioned liability of the parties by this provision:

AOSHPI and Dealer, as two independent business entities, recognize that AOSHPI should not and will not bear any liability, whether founded in contract or in tort, for damage to person or property, however caused or for loss of anticipated profits or (without limitation of the

foregoing) for any indirect or consequential damages suffered by Dealer or any other person, firm or corporation whether as a result of or in connection with or as an incident to the sale, installation, testing, repair, replacement, use or operation of any of the products or components thereof or otherwise.

Skyline argues that (1) the indemnifying agreement does not apply, because it is limited to those cases involving installation or servicing of A.O. Smith's products, not those provided by other manufacturers; and (2) even if the indemnifying agreement were applicable, it does not cover costs of defense such as attorney fees.

### I. Does the Indemnifying Agreement Apply?

■ Coverage of the indemnifying agreement turns on whether this injury, caused by an instrumentality which had no direct connection with A.O. Smith, was nevertheless one which arose from "defects in workmanship relating to any ... installation or service, including any correction or repair thereof, [of any of A.O. Smith's products]."

The dealership agreement provided that "[d]ealer shall install and service the products covered by this agreement. Such installation and service shall conform to the specifications and standards of quality established by AOSHPI...."· A.O. Smith contends Skyline's use of the corn drill was like any other tool which might have been used to "correct or repair" a Harvestore structure, as referred to in the indemnifying agreement. The fact the drill itself was not an A.O. Smith product would not change that. We agree. The claim by the Bunces against A.O. Smith was based upon "defects in workmanship relating to ... service, including any correction or repair" of the Harvestore, and A.O. Smith is entitled to indemnity from Skyline under their agreement. The issue remains whether the indemnifying agreement covers A.O. Smith's costs of defense.

### II. Are Defense Costs Included in This Agreement?

Skyline argues that A.O. Smith's costs of defense are not covered by the indemnifying agreement even if it were otherwise applicable. The indemnifying agreement, it argues, must be strictly construed, and it does not expressly mention the indemnitee's right to recover these costs.

■ We know of no rule of law which holds indemnity agreements to stricter standards of construction than other contracts. Our goal, of course, is to give effect to the intention of the parties, and we look again to the words of the indemnifying agreement: that Skyline "shall be responsible for and indemnify and hold [A.O. Smith] harmless *with respect to* any defects...." (Emphasis added.) We believe costs of defense, in a suit based upon defective servicing of A.O. Smith's products, are costs "with respect to" such defects and are covered by this agreement.

While A.O. Smith refers us to no Iowa cases holding costs of defense to be recoverable under a general indemnification agreement,[1] it is the general rule that an indemnitee may recover all reasonable expenses incurred in defending the claim as to which he is to be indemnified. See, e.g., 42 C.J.S. *Indemnity* § 13, at 586 (1944):

As a general rule an indemnitee is entitled to recover, as a part of the damages, reasonable attorney's fees, and reasonable and proper legal costs and expenses, which he is compelled to pay as a result of suits by or against him in reference to the matter against which he is indemnified, provided that under the circumstances of the case he acts in good faith and with due diligence in prosecuting or defending such suits. This rule is especially applicable where the indemnitor is notified and given an opportunity

---

**1.** Several Iowa cases, including *Rauch v. Senecal,* 253 Iowa 487, 112 N.W.2d 886 (1962) and *Turner v. Zip Motors,* 245 Iowa 1091, 65 N.W.2d 427 (1954) have discussed the right of a party to recover costs of defense when, through no fault of his own, he is required to defend a suit by a

third party. *See also Restatement (Second) of Torts* § 914 (1979). These authorities, however, involve recovery under common-law principles of indemnity, not indemnity by contract as we have here.

to contest the adverse litigation but fails or refuses to do so; or where the employment of counsel is with the knowledge of the indemnitor.

(Footnotes omitted.) *See also* 41 Am. Jur.2d *Indemnity* § 36, at 726 (1968) ("As a general rule, and unless the indemnity contract provides otherwise, an indemnitee is entitled to recover, as part of the damages, reasonable attorneys' fees, although there is some authority to the contrary." (Footnotes omitted.))

In this case, we believe the contract for indemnity contemplated payment for these expenses. Costs of defense may be very substantial. In some cases, they might very well exceed the amount of the judgment or settlement which is to be indemnified.

If a "hold harmless" agreement is to be given a realistic construction, it must, in the absence of language evidencing a contrary intent, be held to include such expenses.

The district court correctly held the costs of defense to be included under the parties' agreement. This conclusion makes it unnecessary to address A.O. Smith's alternative argument that indemnity was allowable under general tort principles.

AFFIRMED.