HANOVER LIMITED, a partnership, Western Maintenance and Management, Inc., a Utah corporation, and Brooke Grant, an individual, Plaintiffs,

v.

CESSNA AIRCRAFT COMPANY, a Kansas corporation; Cessna Finance Corporation, a Kansas corporation; Teledyne Industries, Inc., a California corporation; AAR Northwest, Inc., a Deleware corporation; and Trans West Aircraft Sales, Inc., a Utah corporation, Defendants.

TRANS WEST AIRCRAFT SALES, INC., Cross-claimant and Appellant,

v.

CESSNA AIRCRAFT COMPANY, a Kansas corporation, Cross-defendant and Respondent.

No. 880042–CA.

Court of Appeals of Utah.

June 28, 1988.

Rehearing Denied Aug. 4, 1988.

Paul N. Cotro–Manes, Salt Lake City, for defendant-appellant Trans West Aircraft Sale, Inc.

H. Wayne Wadsworth, R.L. Knuth, Watkiss & Campbell, Salt Lake City, for respondent Cessna Aircraft Co.

Before BILLINGS, GREENWOOD and DAVIDSON, JJ.

## OPINION

BILLINGS, Judge:

Trans West, a retail seller, appeals from a summary judgment which denied it indemnification for attorney fees, costs, and expenses from Cessna Aircraft Company, the manufacturer, and Cessna Finance Corporation, co-defendants in a product liability lawsuit based upon an allegedly defective airplane. Trans West seeks a reversal of the summary judgment arguing the trial court misapplied the law, or, alternatively, the trial court erred in not allowing Trans West the opportunity to establish that the airplane was defective and that Trans West was a passive tortfeasor. We reverse and remand.

In the underlying product liability action plaintiffs claimed the six-passenger airplane sold to them by Trans West and manufactured by Cessna was defective. Plaintiffs filed their lawsuit against Cessna Aircraft Company ("Cessna"), the manufacturer of the airplane; Teledyne Industries, Inc., the company that designed and manufactured the airplane powerplant; AAR Northwest, Inc. ("AAR"), the regional franchise distributor of Cessna airplanes; Trans West, the retail seller; and, Cessna Finance Corporation ("C.F.C."), Cessna's underwriting and financing subsidiary. Plaintiffs' complaint alleged against each defendant (1) deceit, (2) negligent misrepresentation, (3) breach of express warranties, (4) breach of implied warranties, (5) negligence, and (6) failure to comply with 15 U.S.C. § 2301 (1982). The complaint further stated that

> TRANS WEST was, at all times material to this action, engaged on its own behalf and as an appointed dealer for CESSNA and C.F.C., in the business of marketing aviation products and services to the public at large in Utah and other jurisdictions.

Similar assertions were exacted against each named defendant. Trans West claims it made an oral tender of its defense in the principal action to a Cessna zone manager in the same month in which the product liability suit was commenced. Trans West made no formal written tender of its defense. However, Cessna and Cessna Finance were aware of Trans West's involvement in the suit and its request for indemnification because all were named defendants and Trans West filed a cross-claim for indemnification.

Trans West, in its cross-claim, sought indemnity for any judgment plaintiffs received against Trans West, plus interest, attorney fees, costs, and expenses. Trans West, at all times, insisted it made no independent representations or warranties regarding the subject airplane, but rather was merely a "passive" retail seller in the chain of commerce.

A compromised settlement was reached between plaintiffs and all named defend-

ants, including Trans West, prior to trial. An order dismissing the product liability action, with the exception of Trans West's cross-claims for indemnity, was entered. Trans West paid no part of the settlement to plaintiffs. Trans West asserts it is entitled to the attorney fees, costs, and expenses incurred in defense of plaintiffs' product liability action based on an implied indemnity theory. Cessna and Cessna Finance, however, argue that Trans West is not entitled to recover attorney fees, expenses, and costs because these expenses were incurred by Trans West in defending itself.

The matter came before the trial court on cross motions for summary judgment. The trial court granted Cessna's and Cessna Finance's motions and denied Trans West's. Trans West appeals from this determination.

On appeal, we review the facts and inferences reasonably drawn therefrom in the light most favorable to the party against whom summary judgment was granted. *Payne ex. rel. v. Myers*, 743 P.2d 186, 187–88 (Utah 1987); *Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 229 (1987); *K.O. v. Denison*, 748 P.2d 588, 590 (Utah Ct. App.1988). If we conclude there is a dispute as to a material issue of fact, we must reverse the trial court's determination and remand to the trial court on that issue. *Atlas*, 737 P.2d at 229; *Denison*, 748 P.2d at 590.

We must determine when, if at all, a retail seller can recover its attorney fees, costs, and expenses from a manufacturer in a products liability action. This is an issue of first impression in Utah.

## I.

## IMPLIED INDEMNITY

■ There is no express indemnity contract between Trans West and Cessna wherein Cessna was obligated to defend actions brought against Trans West for injury caused by defective airplanes manufactured by Cessna and sold by Trans West. Consequently, Trans West is enti-

tled to be indemnified, if at all, under the equitable concept of implied indemnity.

The general rule of indemnity provides that

A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct.

Restatement of the Law of Restitution § 76 (1937). Implied indemnity arises from equitable considerations. *Hill v. Joseph T. Ryerson & Son, Inc.*, 165 W.Va. 22, 268 S.E.2d 296, 300 (1980). It is based upon principles of restitution which state:

A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in discharge of such liability.

Restatement of Restitution § 96 (1937). *Accord Hill*, 268 S.E.2d at 301.

■ The law is well settled that, in certain circumstances, indemnification may be based upon a theory of a contract implied in law. *See, e.g., Henderson Realty v. Mesa Paving Co., Inc.*, 27 Ariz.App. 299, 554 P.2d 895, 896 (1976); *Aetna Life & Casualty Co. v. Ford Motor Co.*, 50 Cal. App.3d 49, 52, 122 Cal.Rptr. 852, 854 (1975); *Sendroff v. Food Mart of Connecticut*, 34 Conn.Sup. 624, 381 A.2d 565, 566–67 (1977); *Safeway Stores, Inc. v. Chamberlain Protective Servs., Inc.*, 451 A.2d 66, 69–70 (D.C.Ct.App.1982); *Pender v. Skillcraft Indus., Inc.*, 358 So.2d 45, 47 (Fla.Ct.App.1978). Utah has recognized this theory where, as between the parties, based upon their respective culpability, the obligation ought to be discharged by the more culpable party. *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 218 (Utah 1984). *Accord Salt Lake City School Dist. v. Galbraith & Green, Inc.*, 740 P.2d 284, 287 (Utah Ct.App.1987).

Although the Utah Supreme Court has not directly addressed the issue, courts from other jurisdictions have uniformly held that in products liability litigation pas-

sive suppliers, distributors, and retailers may be entitled to indemnification from the manufacturer of a defective product for any judgment they are required to pay a purchaser. *See, e.g., Good v. A.B. Chance Co.,* 39 Colo.App. 70, 565 P.2d 217, 227 (1977); *Peterson v. Lou Bachrodt Chevrolet Co.,* 61 Ill.2d 17, 329 N.E.2d 785, 786–87 (1975); *Kroger Co. v. Bowman,* 411 S.W.2d 339, 342–43 (Ky.1967); *Smith Radio Communications, Inc. v. Challenger Equip., Ltd.,* 270 Or. 322, 527 P.2d 711, 713 (1974). "The major purpose of strict liability is to place the loss caused by a defective product on those who create the risk and reap the profit by placing a defective product in the stream of commerce...." *Liberty Mut. Ins. Co. v. Williams Machine & Tool Co.,* 62 Ill.2d 77, 338 N.E.2d 857, 860 (1975). The courts have implemented this purpose by allowing wholesalers, retailers, sellers, and users of a product to seek indemnity. This right of implied indemnification is accorded to a retailer against the manufacturer of an alleged defective product regardless of whether the seller is found liable to the purchaser under a strict liability theory in tort or that of breach of warranty. *Hill,* 268 S.E.2d at 300.

We agree with the aforementioned authority. We are persuaded that the same policy which holds a manufacturer liable for a defective product under strict liability in tort or breach of warranty should apply in ascertaining whether indemnity will be permitted to a passive retailer. *See Wagner v. Beech Aircraft Corp.,* 37 Wash.App. 203, 680 P.2d 425, 429 (1984).

> The doctrine of strict liability is premised upon the sound public policy consideration that the manufacturer who places a product in the stream of commerce for use by the general public is best able to bear the risk of loss resulting from the defective product. The manufacturer has a nondelegable duty to produce a reasonably safe product.

*Id.* (citations omitted).

■ Through the equitable concept of implied indemnity, the retailer-indemnitee is prevented from being held derivatively or vicariously liable for the wrongful act of the manufacturer-indemnitor. Accordingly, even in the absence of an express indemnity agreement, retailers in products liability actions may recover any judgment they are required to pay from the manufacturer of the defective product provided certain conditions, developed *infra,* are satisfied.

## II.

### ATTORNEY FEES AVAILABLE IN IMPLIED INDEMNITY

The precise issue presented in this case is whether a retailer can recover attorney fees, costs, and expenses from a manufacturer under the doctrine of implied indemnity. An indemnitee is not "held harmless" pursuant to an implied indemnity agreement if it must incur expenses to vindicate its rights. *See INA Ins. Co. of North Am. v. Valley Forge Ins. Co.,* 150 Ariz. 248, 722 P.2d 975, 982 (Ct.App.1986). *Accord Heritage v. Pioneer Brokerage & Sales, Inc.,* 604 P.2d 1059, 1066–67 (Alaska 1979).

The right to recover attorney fees and expenses under an implied indemnity contract is not based upon the indemnitee-retailer's failure to fulfill an obligation to take over the indemnitee-retailer's defense or upon the existence of some benefit to the indemnitor-manufacturer arising from the defense conducted by the indemnitee. *Pullman Standard, Inc. v. Abex Corp.,* 693 S.W.2d 336, 339 (Tenn.1985). Rather, the right to recover these sums is, like the right of the indemnitee to be indemnified for any judgment or settlement it pays, based upon the relationship between the parties. *Id.* Where the natural and proximate consequences of the acts or omissions of a manufacturer exposed a retailer to litigation with a third party, courts have concluded that equity should allow attorney fees as an element of damages. *See, e.g., Wagner v. Beech Aircraft Corp.,* 37 Wash.App. 203, 680 P.2d 425, 431 (1984) (quoting *Alrdrich & Hedman, Inc. v. Blakely,* 31 Wash.App. 16, 639 P.2d 235 (1982)).

Although courts generally agree that an indemnitee should be able to recover attor-

ney fees from an indemnitor in defending allegations of the indemnitor's wrongful conduct, they disagree in analyzing the meaning of "wrongful conduct" in the context of products liability litigation. *Compare, e.g., Heritage v. Pioneer Brokerage & Sales, Inc.,* 604 P.2d 1059 (Alaska 1979) and *Pender v. Skillcraft Indus., Inc.,* 358 So.2d 45 (Fla.Ct.App.1978) with *Shaffer v. Honeywell, Inc.,* 249 N.W.2d 251 (S.D.1976) and *Conrad v. Suhr,* 274 N.W.2d 571 (N.D. 1979).

One line of authority refuses to compel manufacturers to indemnify suppliers and retailers for their attorney fees, costs, and expenses, reasoning that where the plaintiff alleges that each member of the distribution chain is independently liable, each named defendant is therefore defending its own purported wrongdoing rather than that of the manufacturer-indemnitor. Under these circumstances, each party is to bear its own attorney fees, costs, and expenses. *See, e.g., Weston v. Globe Slicing Machine Co.,* 621 F.2d 344 (9th Cir.1980) (interpreting Idaho law); *Farr v. Armstrong Rubber Co.,* 288 Minn. 83, 179 N.W. 2d 64 (1970); *Krug v. Sterling Drug, Inc.,* 416 S.W.2d 143 (Mo.1967); *Conrad v. Suhr,* 274 N.W.2d 571 (N.D.1979); *Shaffer v. Honeywell, Inc.,* 249 N.W.2d 251 (S.D. 1976). This line of authority which denies recovery equates vicarious or relational liability with "wrongdoing" in the context of indemnity. Under the restrictive view no protection is afforded to retailers and distributors who may be compelled to incur large expenses to defend a products liability action merely because a defective product attributable solely to the manufacturer's conduct passed through their hands. *Piedmont Equip. Co., Inc. v. Eberhard Mfg. Co.,* 99 Nev. 523, 665 P.2d 256, 259 (1983).

The other line of authority permits an indemnitee-retailer to recover attorney fees, costs, and expenses from the manufacturer under implied indemnity, provided the manufacturer supplied a defective product, the indemnitee is free from active wrongdoing, and the indemnitee has notified the manufacturer of the claim or the manufacturer is aware of it because it is a co-defendant. These courts reason that the fees are incurred in defending the products liability claim merely because of the retailer's relationship with the manufacturer and not because of the retailer's own wrongdoing and may be recovered as part of the retailer's damages. *See, e.g., Heritage v. Pioneer Brokerage & Sales, Inc.,* 604 P.2d 1059 (Alaska 1979); *Sendroff v. Food Mart of Connecticut, Inc.,* 34 Conn.Sup. 624, 381 A.2d 565 (1977); *Pender v. Skillcraft Indus., Inc.,* 358 So.2d 45 (Fla.Ct.App.1978); *see also Litton Sys., Inc. v. Shaw's Sales & Serv., Ltd.,* 119 Ariz. 10, 579 P.2d 48 (Ct.App.1978); *Boudreau v. General Elec. Co.,* 2 Hawaii App. 10, 625 P.2d 384 (Hawaii Ct.App.1981); *Massingale v. Northwest Cortez, Inc.,* 27 Wash.App. 749, 620 P.2d 1009 (1980). This line which allows recovery *would* hold the retailer responsible for its own attorney fees where primary negligence, separate representations or warranties are defended against, but *not* if the reason for the retailer's defense is simply that the retailer was a passive link in the chain through which the defective product passed.

■ We believe the better reasoned approach is to allow the recovery of attorney fees, costs, and expenses if the manufacturer produced a defective product or was an active wrongdoer, the retailer is free from active wrongdoing in the underlying products liability action, and the manufacturer has been given notice of the claim for indemnity. A retailer should not be barred from recovering, as part of indemnity, attorney fees, costs, and expenses incurred in defending claims merely because of a relationship with a culpable manufacturer. A non-negligent retailer or distributor who is defending against vicarious allegations of breach of warranty or strict liability should be able to recover its attorney fees, costs, and expenses which were incurred as a result of the manufacturer's placing a defective product in the stream of commerce. *See* Gordon, *Total Equitable Indemnity: Can it Pierce a Pretrial Settlement?,* 20 Loy.L.A.L.Rev. 99, 138 (1986).

## A.

## DEFECTIVE PRODUCT

The manufacturer must have introduced a defective product into the stream of commerce before it is liable for the retailer's attorney fees, costs, and expenses. *See Merck & Co. v. Knox Glass, Inc.,* 328 F.Supp. 374, 378 (D.C.Penn.1971); *Harley-Davidson of Mobile, Inc., v. Goodyear Tire & Rubber Co.,* 435 So.2d 1308, 1309 (Ala. Civ.App.1983); *D.G. Shelter Products Co. v. Moduline Indus., Inc.,* 684 P.2d 839, 841 (Alaska 1984); *Maple Chair Co. v. W.S. Badcock Corp.,* 385 So.2d 1036, 1038 (Fla. Ct.App.1980); *Rauch v. Senecal,* 253 Iowa 487, 112 N.W.2d 886, 888 (1962); *Winkler v. Gilmore & Tatge Mfg. Co., Inc.,* 334 N.W.2d 837, 841 (N.D.1983); *United States Fire Ins. Co. v. Chrysler Motor Corp.,* 264 Or. 362, 505 P.2d 1137, 1140 (1973), *rev'd on other grounds Kamyr v. Boise Cascade Corp.,* 268 Or. 130, 519 P.2d 1031, 1032 n. 1 (1974).

■ This requires a factual finding of liability on the part of the manufacturer. *See D.G. Shelter Products Co. v. Moduline Indus., Inc.,* 684 P.2d 839, 841 (Alaska 1984); *St. Paul Fire & Marine Ins. Co. v. Crosetti Bros., Inc.,* 256 Or. 576, 475 P.2d 69, 71 (1970). Settlement of the underlying products liability action does not preclude indemnification. *Zebrowski & Assocs., Inc. v. City of Indianapolis,* 457 N.E.2d 259, 264 (Ind.Ct.App.1983). If, however, in reaching the settlement agreement, the manufacturer does not admit it furnished a defective product, the trial court must resolve this issue before determining liability for attorney fees, costs, and expenses. *See D.G. Shelter Products Co. v. Moduline Indus., Inc.,* 684 P.2d 839, 841 (Alaska 1984).[1]

Indemnity exists only where one without "fault" has been compelled by a legal obli-gation to pay an injured party for the injury created by another. Thus, if a retailer has been forced to defend a suit where it is ultimately found the manufacturer did not produce a defective product, there is no right to indemnification. *Merck & Co. v. Knox Glass, Inc.,* 328 F.Supp. 374, 378 (D.C.Penn.1971). In this situation the retailer is in a position no different from that of any other defendant forced to defend against spurious claims. *See Papas v. Kohler Co., Inc.,* 581 F.Supp. 1272, 1274 (D.C.Penn.1984). A manufacturer is not an insurer of the retailer's defense costs regardless of fault. *Merck & Co. v. Knox Glass, Inc.,* 328 F.Supp. 374, 378 (D.C. Penn.1971).

## B.

## RETAILER FREE FROM ACTIVE WRONGDOING

Another prerequisite to recovery of attorney fees, costs, and expenses is that the retailer-indemnitee must not be defending against allegations of its own culpable conduct. *D.G. Shelter Products Co. v. Moduline Indus., Inc.,* 684 P.2d 839, 841 n. 5 (Alaska 1984). *Accord Heritage v. Pioneer Brokerage & Sales, Inc.,* 604 P.2d 1059, 1067 (Alaska 1979); *Addy v. Bolton,* 257 S.C. 28, 183 S.E.2d 708, 710 (1979). *See also Morris v. American Motors Corp.,* 142 Vt. 566, 459 A.2d 968, 974 (1982). The retailer is not precluded from recovering attorney fees, costs, and expenses because the retailer is found derivatively or vicariously liable under a theory of strict liability or breach of warranty.

On the other hand, if it is determined that the retailer incurred attorney fees, costs, and expenses in defense of its own negligence, or its own independent warranties, then the retailer is not entitled to indemnification. *See, e.g., Weston v. Globe Slicing Machine Co.,* 621 F.2d 344, 349

---

1. *But see Heritage* wherein the Alaska Supreme Court takes a position somewhat inconsistent with its decision in *D.G. Shelter* by stating:

   If the right to costs and attorney's fees for defending the law suit [sic] is made contingent on losing on the merits of that action, in every case the indemnitee would be put in the difficult position of attempting to show lack of his own culpability at the same time he is aiding the plaintiff's case by attempting to prove the liability of the indemnitor. Such a situation certainly would be contrary to both the indemnitee's and indemnitor's interests in many instances. . . .

   *Heritage,* 604 P.2d at 1067. *Compare D.G. Shelter,* 684 P.2d at 841.

(9th Cir.1980) (applying Idaho law); *Farr v. Armstrong Rubber Co.*, 288 Minn. 83, 179 N.W.2d 64, 66 (1970); *Krug v. Sterling Drug, Inc.*, 416 S.W.2d 143, 156–57 (Mo. 1967); *Papas v. Kohler Co., Inc.*, 581 F.Supp. 1272, 1274 (D.C.Penn.1984).

## C.

### DETERMINATION OF RETAILER'S CULPABILITY

Controversy also surrounds the correct method for assessing if a retailer, as the potential indemnitee, is defending allegations of its own wrongdoing or those of the manufacturer-indemnitor in the underlying products liability action.

Some courts look solely to the pleadings to determine whether a party is defending against allegations of his own wrongful conduct. *Conrad v. Suhr*, 274 N.W.2d 571, 578 (N.D.1979). *Accord Weston v. Globe Slicing Machine Co.*, 621 F.2d 344, 348 (9th Cir.1980) (interpreting Idaho law). While we concede the pleadings may be a starting point, we agree with the courts which reason:

> the jurisdictions which follow the [restrictive] rule rely on the allegations in the plaintiff's complaint to determine whether the indemnitee is entitled to costs and attorney's fees from the indemnitor; only if the indemnitee is defending solely and exclusively against allegations of the indemnitor's wrongful conduct may he recover such expenses. Such a restriction may prove very damaging to retailers and distributors. It does not require any legal ingenuity to draft a complaint charging someone with negligence, and no evidence is needed to support such an allegation. The right to indemnification for litigation expenses should not depend on the pleading choices of a third party, who through an excess of caution or optimism may allege far more than he can prove at trial.

*Piedmont Equip. Co., Inc. v. Eberhard Mfg. Co.*, 99 Nev. 523, 665 P.2d 256, 259–60 (1983) (citations omitted). Mere allegations of active negligence or breach of warranty or strict liability in tort should not deprive

a retailer of its indemnification. *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 339 (Tenn.1985).

While the charges alleged in the complaint may be a starting point to determine the recoverability of attorney fees, costs, and expenses by a retailer, the actual facts developed during the course of litigation and not the mere allegations of the pleadings should control. *See Insurance Co. of North Am. v. King*, 340 So.2d 1175, 1176 (Fla.Ct.App.1976).

> [I]t is an indemnitee's actual wrongdoing or lack of it, rather than allegations of wrongdoing, which determine the indemnitee's rights. A plaintiff should not be able to arbitrarily deprive a defendant of his right to indemnification from a third party by alleging that he was actively negligent when in fact that defendant is found not to have been actively negligent.

*Id. Accord INA Ins. Co. v. Valley Forge Ins. Co.*, 150 Ariz. 248, 722 P.2d 975, 980 (Ct.App.1986).

However, an indemnitee's right to attorney fees, costs, and expenses depends on the facts *presented* as well as the facts found by the trier of fact. *Piedmont Equip. Co., Inc. v. Eberhard Mfg. Co.*, 99 Nev. 523, 665 P.2d 256, 259–60 (1983). The indemnitee is entitled to recover only its attorney fees, costs, and expenses attributable to defending against the allegations of the defective product where it was merely a passive seller. *See id.* The indemnitee is not entitled to those fees incurred in defending allegations of its own active misconduct. *Id.*

## D.

### REQUIREMENT THAT RETAILER PAY JUDGMENT

■ We reject Cessna's contention that in order to recover attorney fees and other litigation expenses the retailer must pay a judgment or settlement to the plaintiffs in the underlying products liability action. It is not necessary that the indemnitee pay a judgment or settlement to a third party in

order to recover litigation expenses from a manufacturer-indemnitor. Such a condition would penalize a party for successfully defending the allegations against it. *See, e.g., INA Ins. Co. v. Valley Forge Ins. Co.,* 150 Ariz. 248, 722 P.2d 975, 980 (Ct.App. 1986); *Heritage v. Pioneer Brokerage & Sales, Inc.,* 604 P.2d 1059, 1067 (Alaska 1979); *Pender v. Skillcraft Indus., Inc.,* 358 So.2d 45, 47 (Fla.Ct.App.1978); *Hill v. Joseph T. Ryerson & Son, Inc.,* 165 W.Va. 22, 268 S.E.2d 296, 300 (1980).

> If the right to costs and attorney's fees for defending the law suit [sic] is made contingent on losing on the merits of that action, in every case the indemnitee would be put in the difficult position of attempting to show lack of his own culpability at the same time that he is aiding the plaintiff's case by attempting to prove the liability of its indemnitor. Such a situation certainly would be contrary to both the indemnitee's and the indemnitor's interests in many instances, and we decline to create an incentive for accomplishing that result.

*Heritage,* 604 P.2d at 1067. Accordingly, we hold that if the retailer would be entitled to indemnification of attorney fees and other litigation costs if it had lost the products liability action and had had a judgment entered against it (for passive negligence, breach of express or implied warranty, or strict liability) then it will be equally entitled to such indemnification should it successfully defend itself in the underlying action. *See Pender v. Skillcraft Indus., Inc.,* 358 So.2d 45, 47 (Fla.Ct.App.1978).

■ However, the right to recover attorney fees and other litigation expenses remains limited. The indemnitee can only recover those sums incurred in the primary products liability action, i.e., the defense of the claim indemnified against; the indemnitee is *not* entitled to those fees incurred in establishing its right to indemnity. *United General Ins. Co. v. Crane Carrier Co.,* 695 P.2d 1334, 1339 (Okla.1984).

### E.

### NOTICE REQUIREMENT

The next issue we address is whether the retailer, as the potential indemnitee, must tender the defense of the underlying products liability action to the manufacturer, the potential indemnitor, as a condition precedent to recovering attorney fees and other litigation costs.

■ A formal tender of defense by the indemnitee is not required if the indemnitor has been given timely notice of the underlying action particularly if the indemnitor is a party to the action and the indemnitee's claim of indemnity is part of that action. *Hill v. Joseph T. Ryerson & Son, Inc.,* 165 W.Va. 22, 268 S.E.2d 296, 302 (1980).

### III.

### ANALYSIS

In light of the foregoing, we reverse the trial court's entry of summary judgment in favor of Cessna and remand for further proceedings.

In the instant case, the plaintiffs instituted the products liability action against Cessna, the manufacturer, and Trans West, the retailer. Trans West claims it immediately orally notified Cessna, through a regional manager, of the pending suit. In any event, it is undisputed that Cessna and Cessna Finance had actual notice of the action because they were named as co-defendants, along with Trans West, from the lawsuit's inception. Furthermore, Trans West filed a claim for indemnity in the underlying action before the settlement was reached. The products liability action was settled. In the written settlement agreement, Cessna did not admit that it had manufactured a defective airplane. Trans West paid no part of the settlement.

The trial court's granting of Cessna and Cessna Finance's motions for summary judgment was premature. As previously articulated, a factual determination must be made as to whether (1) Cessna manufactured a defective airplane, and (2) Trans West was simply an innocent "passive" link in the chain of commerce, before it can be determined whether Trans West should be indemnified for its attorney fees, costs, and expenses. Furthermore the trial court

must determine whether Trans West's attorney fees, costs, and expenses were incurred in defending claims of product defect or whether the fees were incurred in defending allegations of active negligence or independent warranty. The fees should be allocated if necessary.

Reversed and remanded for further proceedings consistent with this opinion.

GREENWOOD and DAVIDSON, JJ., concur.