**MERCK & COMPANY, Inc., Plaintiff,**

v.

**KNOX GLASS, INC., and KL&D Company, Defendants.**

Civ. A. No. 41416.

United States District Court,
E. D. Pennsylvania.

May 28, 1971.

Robert S. Ryan, Drinker, Biddle & Reath, Philadelphia, Pa., for plaintiff.

Victor L. Drexel, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

VAN ARTSDALEN, District Judge.

This indemnity action is submitted for final determination on a stipulation of facts. The legal issue for determination:—Is a manufacturer liable to indemnify an intermediate seller for the costs of defense, including counsel fees, of a products liability case tried under the "strict liability" doctrine of Section 402(a), Restatement of Torts, 2nd. (as adopted in Pennsylvania in Webb v. Zern, 422 Pa. 424, 220 A.2d 853), where the jury renders a verdict in favor of defendant?

The stipulated facts are as follows:

1. Merck is a corporation incorporated under the laws of the State of New Jersey with its principal place of business at Rahway, New Jersey.

2. KL&D Company ["KL&D"] is a corporation incorporated under the laws of the Commonwealth of Pennsylvania with its principal place of business in Pennsylvania.

3. Knox Glass, Inc. ["Knox"] is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Pennsylvania.

4. On or about September 30, 1965, Knox acquired the business and assumed the liabilities of KL&D, including any liability assessed in this action.

5. On or about May 12, 1966, one Herbert Schindler instituted an action in the Eastern District of Pennsylvania, Civil Action No. 40291, against Plaintiff herein.

6. The entire record in Civil Action No. 40291 shall be deemed to be a part of the record in this action.

7. In December, 1969, Civil Action No. 40291 was tried before the Honorable Ralph C. Body and a jury and resulted in a verdict for Merck, defendant therein, plaintiff herein.

8. In connection with the trial of the Schindler action [Civil Action No. 40291] Merck, Knox and KL&D determined that their interests were best served by deferring to this action resolution of the issues presented herein, and agreed before Judge Body that Merck's right to present the claims asserted in this action would not be prejudiced by its adherence to that joint decision.

9. The Schindler action was tried upon evidence to which the principles of strict liability as enunciated in Restatement, Torts 2d., § 402 A applied and the Trial Judge charged the jury exclusively on these principles.

10. The evidence offered by the Plaintiff in the Schindler action was to the effect that:

(a) A bottle sold by Merck containing hydrochloric acid, broke in his hands and injured him;

(b) The bottle reached him in substantially the same condition as it was at the time it was in the possession of Merck;

(c) The bottle contained a manufacturing defect which caused it to break.

11. In this action, it is admitted that the pieces of bottle, identified by Schindler as being those which came from the bottle which injured him, were manufactured by KL&D [which prior to the acquisition described in paragraph 4 was known as Knox Glass] and were of the type and kind it sold exclusively to Merck, for use as containers for hydrochloric acid.

12. At the outset of discovery in 1966, Herbert Schindler maintained that the bottle which he claimed to be defective carried the Knox emblem or trade mark. KL&D has admitted that the bottle fragments, identified by Herbert Schindler as being the pieces of the bottle, are of its manufacture and of the type and kind sold by it exclusively to Merck, for use as containers for hydrochloric acid.

13. Merck gave Knox and KL&D timely notice of the claims against it and demanded that they assume the defense of the actions and pay any judgments or settlements as a result thereof. Knox and KL&D rejected Merck's demand.

14. In defense of the Herbert Schindler action, Merck incurred the following legal costs, all of which are reasonable and necessary:

(i) Preparation of defense against Herbert Schindler $13,000.
(ii) Preparation of claim against Knox Glass, and KL&D 2,000.
(iii) Unreimbursed expenses—re: (i) 2,480.
Total: $17,480.

15. The parties agree that any amendments to the Complaint in this action necessary to assert the claim described above shall be deemed to have been effected.

16. For cause shown, any party may seek leave to supplement the record.

The jury verdict in favor of defendants in the products liability action instituted by Schindler determined either: (1) Schindler was not injured, or (2) the alleged defective bottle was not sold by Merck to Schindler (and as a corollary—the bottle was not manufactured by Knox), or (3) the bottle was not defective when received by Schindler. In any event the jury determined that neither Merck nor Knox (joined as a third-party defendant) was liable to Schindler. If the verdict was because the jury concluded Schindler was not injured (a most unlikely possibility since the evidence of a serious injury was overwhelming), Schindler should not have brought action against Merck. There would appear to be no logical or equitable basis, in such event, for Merck to place the entire cost of defense on Knox, simply because Merck joined Knox as the manufacturer. If the verdict was because plaintiff failed to prove that it bought the bottle from Merck, then Schindler simply sued a wrong party. Merck could not hold Knox for the costs of defense since Knox would not have been the manufacturer. In such event, on the contrary, Knox would appear to have a more logical claim against Merck for Knox's costs of litigation, by reason of Merck having joined Knox as a third party defendant.

By stipulation of fact No. 11, the parties agree that the bottle was manufactured by Knox, and by inference, at least, distributed to Schindler through Merck. Accepting this as a fact for purposes of this action, the jury's verdict in favor of defendants in the Schindler action leads to the conclusion that the bottle was not defective prior to coming into Schindler's hands. In this situation, is there any basis for imposing all of the costs of litigation upon the manufacturer?

The right of indemnity is quite limited. Indemnity arises where one is legally required to pay an obligation for which another is primarily liable. In actions of tort, it can arise only where one who, without fault on his part, has been compelled by a legal obligation to

pay an injured party for injuries caused by active fault of another. Fisher v. United States, 299 F.Supp. 1 (E.D.Pa. 1966); Press and Shear Machinery Corporation v. L. & J. Press Corporation, 326 F.Supp. 483 (E.D.Pa. April 16, 1971), and cases therein cited. See also Builders Supply Co. v. McCabe, 366 Pa. 322, 77 A.2d 368 (1951) for discussion and review of the right of indemnity, wherein the case was decided under controlling law of Ohio.

Merck does not dispute those generally accepted doctrines as to situations where indemnity is appropriate. However, Merck takes the position that classic concepts of doctrines of indemnity do not necessarily apply in cases where the law imposes liability without fault, such as the Section 402(a) cases of the Restatement of Torts, 2nd., under which doctrine the Schindler case was tried and successfully defended. Merck's theory is novel and interesting, but totally without supporting authority.

Merck contends that if a verdict in any amount had been awarded in favor of Schindler, even if minimal or nominal, Merck would be entitled to indemnity for the amount of the award and the costs of litigation, including counsel fees. There is support for this contention. Section 914, Restatement of Torts, 2nd., Seaboard Surety Co. v. Permacrete Construction Corp., 221 F.2d 366 (3rd Cir. 1955), Corace v. Balint, 418 Pa. 262, 210 A.2d 882 (1965). Merck, therefore, points out that had it lost the case, it would presently be in a more advantageous position in sustaining its indemnity action for costs and counsel fees. Although this may be true, it overlooks the judicially determined fact from the Schindler verdict that Merck was not liable to Schindler. There is no more reason to permit recovery of counsel fees from Knox than from Schindler, the unsuccessful party to the litigation.

In the absence of (1) a statutory duty to reimburse for litigation costs and counsel fees, or (2) a contractual obligation so to do, or (3) a finding of fault on the part of Knox, there would be no basis for indemnification. The record is totally devoid of any of these three elements.

Merck is in no different position than any other successful defendant who must bear the costs of counsel fees to establish his defense. Comment c, Restatement of Torts, 2nd., Section 914, states:

"Aside from statutory provisions, a successful party in an action of tort is not entitled to compensation for loss of time, attorney fees, or other expenses in the conduct of litigation. He can recover only the statutory costs * * *"

Parenthetically, it might be noted that Merck, having joined Knox as a third party defendant, thereby imposed upon Knox court costs and attorney fees of substantial proportions for which Knox appears to have no right for reimbursement.

Restatement of Torts, 2nd., Section 402(a) and the comments thereto give little assistance. The theory of this section is stated under Comment c as follows:

"c. On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to af-

ford it are those who market the products."

This comment mentions sellers of goods and those who market goods. It does not seek to impose any final or ultimate liability on the manufacturer. The purpose is to protect the ultimate consumer to the maximum extent, and thereby afford the consumer the right to institute action against anyone in the distributive chain, from the manufacturer to the ultimate retailer.

Merck contends that by refusing indemnity for costs and counsel fees, the court would encourage sellers other than manufacturers to take a lax attitude in defending actions brought by consumers under Section 402(a). Whether such would occur, and whether, even if such did occur, this would necessarily lead to inequitable results, taking into consideration that Section 402(a) is to assist ultimate consumers, is questionable. A seller may always join the manufacturer as an additional party.

Even accepting the proposition that had Schindler recovered a verdict, Merck would be entitled to indemnity against Knox for the amount of the verdict and the costs of litigation including attorney fees, such a result would not automatically follow. Merck would have to prove that the bottle was defective when it was obtained from the manufacturer, and that it did not substantially change the bottle before passing it on to the consumer. Despite the jury finding of no liability, Merck would impose the litigation costs and counsel fees on Knox simply because it was the manufacturer, and irrespective of whether or not the bottle was defective when it left the manufacturer's hands This would substantially expand seller's right of indemnity for litigation costs from the manufacturer beyond any existing case law. The manufacturer would become the insurer of seller's defense costs, irrespective of whether the product was defectively manufactured.

Although Section 402(a) of the Restatement of Torts, 2nd., is undoubtedly based on public policy, the terminology of "liability without fault" is too broad to be precisely accurate. Comment m of Section 402(a) states flatly that liability is based neither on warranty nor negligence but "the basis of liability is purely one of tort." To say that liability is based on a non-negligent tort is not synonymous with liability without fault. The "fault" is a faulty non-negligent design or manufacturing defect. As stated in Section 402(a), the product must have been sold "in a defective condition unreasonably dangerous to the user or consumer * * *"

If an intermediate seller is found liable to an injured party because of defective design or manufacture of a product "unreasonably dangerous to the user or consumer", there are logical and sound reasons why that liability should ultimately fall upon the manufacturer. However, I can find no sound or just reason in law or equity; nor any logical, practical or public policy reason why an alleged manufacturer should be required to indemnify an intermediate seller until and unless the intermediate seller is determined to be liable, and the product is determined to have been defectively designed and/or manufactured. In this case the intermediate seller was found not liable, and there is no showing that the product was in any way defective either as to design or manufacture.

I conclude therefore that defendant, on the facts in this case, is entitled to judgment.