# In re Dauphin County Asbestos Cases

*Christopher C. Conner,* for defendant MCIC Inc.

*Robert B. Hoffman,* for defendant Wellington Fund.

*Christopher A. Beck,* for defendant Owens-Corning.

*David R. Johnson,* for defendant Celotex.

DOWLING, *J.,* January 5, 1989 — A quintet of asbestos cases (hereinafter Trial Group I),[1] proceeded to trial in September 1988 and resulted in verdicts in favor of four of the plaintiffs totalling $130,000. The jury exonerated defendant MCIC Inc., (formerly known as McCormick Asbestos Company), an insulating contractor and/or supplier of insulation products, from liability, but determined that various manufacturers of asbestos products were liable to plaintiffs in varying degrees.

---

1. The five cases are docketed at 3368-1 -S 1984 through 3368-5 S 1984. The Trial Group I plaintiffs are William and Gloria Anstine, Edward and Helen Bair Jr., George and Janet Bartch, Blain and Dolores Cutler, and Harold and Flo Eakle.

Pending for disposition is a post-trial indemnification cross-claim for attorney's fees and costs filed on behalf of MCIC against six of the defendant manufacturers.

Before addressing the merits of the cross-claim, it may be appropriate to outline the procedural history of this protracted asbestos litigation. The original complaint was filed in November 1984 against approximately 25 manufacturers and/or suppliers of asbestos-containing products. All of the numerous plaintiffs were members of the Plumbers and Pipefitters Local Union No. 520. The complaint alleged that as a result of exposure to defendants' asbestos products, plaintiffs suffer from asbestosis and/or asbestos-related conditions and have a greatly enhanced probability of and susceptibility to other diseases.

Defendants filed preliminary objections to the original complaint. In June and August 1985, the court sustained the objection to the misjoinder of plaintiffs and granted a motion for a more specific pleading.[2] After six months of discovery, counsel filed separate, amended complaints for each plaintiff in February 1986. The complaints contained six counts, but only the strict liability and negligence claims are pertinent to MCIC's cross-claim.

After numerous discovery conferences, depositions and interrogatories, various defendants filed motions for summary judgment in July 1988. The court issued a comprehensive opinion disposing of 27 separate summary judgment motions, denying some and granting others.[3] Defendant MCIC's motions for summary judgment were granted against plaintiffs Anstine, Bair and Barch. When the case

2. Unpublished opinion dated June 6, 1985.
3. 108 Dauphin Rep. 457 (1988).

proceeded to trial in September 1988, MCIC's exposure to liability was limited to the strict liability and negligence claims of plaintiffs Cutler and Eakle. During the course of the trial, plaintiff's counsel stipulated to the entry of a compulsory nonsuit in both of the negligence counts against MCIC. With respect to the strict liability counts, the jury found that inhalation of fibers from products supplied by MCIC was not a substantial contributing factor in bringing about Cutler and Eakle's asbestos-related injuries.

Notwithstanding its successful defense of this asbestos litigation, MCIC seeks to recover its attorneys' fees and costs in a cross-claim for common-law indemnity against six of the defendant manufacturers. In Pennsylvania, the general rule is that each party to the litigation is required to pay his or her own counsel fees. *Gardner v. Clark,* 349 Pa. Super. 297, 503 A.2d 8 (1985); *Estate of Wanamaker,* 314 Pa. Super. 177, 460 A.2d 824 (1983). It is established in our jurisprudence that there can be no recovery of counsel fees from an adverse party to a cause, in the absence of express statutory authorization, or clear agreement by the parties, or some other established exception. *Chatham Communications Inc. v. General Press Corp.,* 463 Pa. 292, 344 A.2d. 837 (1975), citing *Corace v. Balint,* 418 Pa. 262, 271, 210 A.2d 882, 886-7 (1965).

There is neither a statutory allowance, applicable to this case, nor an agreement among defendants which would permit MCIC to recover its costs and fees. Consequently, MCIC premises its cross-claim upon the common-law right to indemnification, which grants an indemnitee a right "to recover attorneys' fees and costs along with the actual judgment from the indemnitor." *Boiler Engineering & Supply Co. v. General Controls Inc.,* 443 Pa. 44.

47, 277 A.2d 812, 814 (1971). While an indemnitee's right to counsel fees and costs is a recognized exception to the general rule, the party seeking recovery of litigation expenses must first establish its entitlement to indemnification.

The right to indemnity among joint tortfeasors is limited. "The right of indemnity rests upon a difference between the primary and the secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which ensures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable." *Burbage v. Boiler Engineering & Supply Company Inc.*, 433 Pa. 319, 326, 249 A.2d 563, 567 (1969); quoting *Builders Supply Company v. McCabe,* 366 Pa. 322, 325, 77 A.2d 368, 370 (1951).

Recent appellate decisions have acknowledged that an obligation to pay damages to a third person because of the primary fault or negligence of another party is the cornerstone of a viable indemnity claim. In *Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo Inc.,* 510 Pa. 1, 507 A.2d 1 (1986), the court noted that the seminary prematurely sought indemnification from a parish church which was a joint tortfeasor in the drowning death of a young boy, where the seminary had not yet been found liable, and the parish had not yet been found primarily responsible for the damages sustained by the victim's estate. In *Sirianni v. Nugent Brothers Inc.,* 509 Pa. 564, 570-1, 506 A.2d 868, 871 (1986), the Supreme Court stated that "the common-law right of indemnity . . . is a fault shifting mechanism, operable only when a defendant who has been held liable to a plaintiff solely by

operation of law, seeks to recover his losses from a defendant who was actually responsible for the accident which occasioned the loss." *Sirianni, supra.*

In the instant case, defendant manufacturers were found liable for plaintiffs' asbestos-related injuries, but there was no judgment against defendant MCIC. Despite the absence of a monetary verdict against it, MCIC now seeks to recover its attorneys' fees and litigation expenses under an indemnification cross-claim against Owens Corning Fiberglass, Celotex, Eagle Picher, and several other defendant manufacturers who were found liable to plaintiffs. This indemnification cross-claim appears to present an issue of first impression in Pennsylvania in that the precise question has not been met head-on although there are appellate decisions discussed above which clearly indicate Pennsylvania's position.

In the absence of a legal obligation to pay damages to plaintiffs, MCIC attempts to shift the focus of the indemnification inquiry away from the threshold liability issue. MCIC maintains that its status as a "cog in the wheel of distribution" of defective insulation products entitles MCIC to be indemnified for the costs of successfully defending this litigation. The essence of MCIC's argument is that all suppliers of defective products are potentially liable under a theory of strict liability and that the right to indemnification should be predicated upon a finding that the product was defective at the point of manufacture and not upon whether the supplier/indemnitee lost the initial litigation.

In support of its theory, MCIC offers a convoluted reading of dicta from a federal products liability case which applied Pennsylvania law. In *Papas v. Kohler Inc.*, 581 F.Supp. 1272 (M.D. Pa. 1984), the court

held that if neither the manufacturer nor the retailer were held liable in a products liability claim, then no right of indemnification for litigation expenses accrues on behalf of the retail distributor. The *Papas* court also observed:

"[A] retailer who sells a *defective* product and becomes a defendant in a lawsuit in which both the manufacturer and retailer are found liable is entitled to full reimbursement for any judgment against it as well as attorney's fees and expenses. In contrast, a retailer who sells a product that is *not defective* but who is sued by the consumer must bear the full cost of defending the suit. In this respect, the retailer who sells a defective product is in a better position than the retailer who sells a non-defective product. Nevertheless, a manufacturer of a non-defective product who is sued in a products liability action should not be forced to pay not only for its own defense but for the defense of the retailer as well. *Merck & Co. v. Knox Glass Inc.,* 328 F.Supp. 374, 378 (E.D.Pa. 1971)." 581 F.Supp. at 1274. (emphasis in original)

MCIC contends that if a manufacturer of a non-defective product does not have to underwrite a retailer's defense in a products liability case, then:

"Conversely, the defendant manufacturers in the instant case, who the jury determined produced a defective product (i.e. an asbestos-containing product), should be required to pay for the cost of defense of the retailer who is sued solely as a cog in the wheel of distribution of that defective product and who is fortunate enough to have extricated itself from liability after an extremely lengthy and costly trial."

MCIC's reliance on *Papas* is suspect. The district court in *Papas* denied indemnification to a retailer for costs and attorneys' fees since both the manu-

facturer and the retailer were exonerated from liability. This holding is in accordance with the recognized rule of indemnification law established by the Pennsylvania Supreme Court in *McCabe, Burbage, Rivera,* and *Sirianni, supra.*

Additionally, the *Papas* decision relies on *Merck & Co. v. Knox Glass Inc.,* 328 F.Supp. 374 (E.D. Pa. 1971), which rejected the notion that there can be indemnification for litigation expenses without a monetary verdict against the would-be indemnitee.

"I can find no sound or just reason in law or equity, nor any logical, practical or public policy reason why an alleged manufacturer should be required to indemnify an intermediate seller until and unless the intermediate seller is determined to be liable, *and* the product is determined to have been defectively designed and/or manufactured." *Merck,* 328 F.Supp. at 378. (emphasis supplied) The result and the reasoning in *Merck* undermine significantly MCIC's interpretation of *Papas.*

Our research has disclosed appellate court decisions from several jurisdictions which embrace MCIC's expansive theory on a supplier's right to indemnification for the costs associated with products liability litigation. In *Pender v. Skillcraft Industries Inc.,* 358 So.2d 45, 47 (Fla. App. 1978) the court held "that if a retailer would clearly have been entitled to indemnification of attorney's fees and court costs if it had lost in the main action and had a judgment rendered against it (for passive negligence, breach of implied warranty, or strict liability), then it will be equally entitled to such indemnification in the event that it should successfully defend itself in the main action." See also *Conrad v. Suhr,* 274 N.W.2d 571 (N.D. 1979); *Heritage v. Pioneer Brokerage & Sales Inc.,* 604 P.2d 1059 (Alaska 1979).

218

We have reviewed these decisions and the arguments advanced by MCIC, and are somewhat impressed by their logic. However, Pennsylvania decisions are to the contrary. While it is true that counsel for MCIC expended considerable time and resources in this case, MCIC is in a position no different from that of any other defendant forced to vindicate its rights in our court.

Accordingly, we enter the following

ORDER

And now, January 5, 1989, defendant MCIC's cross-claim for attorneys fees and costs is denied.