IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 06-0322
════════════
 
Owens & Minor, Inc. and 
Owens & Minor Medical, Inc., Appellants,
 
v.
 
Ansell Healthcare Products, 
Inc. and Becton, Dickinson and Company, 
Appellees
 
════════════════════════════════════════════════════
On Certified Question from the United 
States
 Court of Appeals for the Fifth 
Circuit
════════════════════════════════════════════════════
 
 
Argued October 19, 
2006
 
 
            
Justice Green delivered the 
opinion of the Court, in which Chief 
Justice Jefferson, Justice Hecht, Justice Wainwright, and Justice Brister joined.
 
            
Justice Brister filed a 
concurring opinion.
 
            
Justice O’Neill filed a 
dissenting opinion, in which Justice Medina, Justice Johnson, and Justice Willett joined.
 
 
            
Section 82.002 of the Texas Civil Practice and Remedies Code entitles an 
innocent seller to seek indemnity for litigation costs from the manufacturer of 
a product alleged to be defective. The United States Court of Appeals for the 
Fifth Circuit certified to this Court the following question concerning the 
scope of the manufacturer’s indemnity obligation under Section 82.002:
 
When a distributor 
sued in a products liability action seeks indemnification from less than all of 
the manufacturers implicated in the case, does a manufacturer fulfill its 
obligation under Texas Civil Practice and Remedies § 82.002 by offering 
indemnification and defense for only the portion of the distributor’s defense 
concerning the sale or alleged sale of that specific manufacturer’s product, or 
must the manufacturer indemnify and defend the distributor against all claims 
and then seek contribution from the remaining manufacturers?
 
Burden v. Johnson & Johnson Med., 447 F.3d 371, 375 (5th 
Cir. 2006). In Ansell Healthcare Products, Inc. v. Owens & Minor, 
Inc., the court of appeals concluded that the Section 82.002 indemnity duty 
is not fulfilled by a manufacturer’s “offer to defend” only its own products. 
189 S.W.3d 889, 896–98 (Tex. App.—Texarkana 2006, pet. filed). We disagree. 
Section 82.002 does not require a manufacturer to indemnify a distributor 
against claims involving products other manufacturers released into the stream 
of commerce. Therefore, a manufacturer that offers to defend or indemnify a 
distributor for claims relating only to the sale or alleged sale of that 
specific manufacturer’s product fulfills its obligation under Section 
82.002.
I
            
Owens & Minor, Inc. and Owens & Minor Medical, Inc. (Owens, 
collectively) distributed latex gloves manufactured by other companies. In 
January 2000, Kathy Burden and members of her family filed a products liability 
action in Texas state court. The plaintiffs alleged that 
Burden had developed a Type I systemic allergy from defective latex gloves 
manufactured and sold by Owens, Ansell Healthcare Products, Inc., Becton, 
Dickinson and Company, and more than thirty other manufacturers and sellers of 
latex gloves. It is undisputed that Owens was an innocent seller in the chain of 
distribution of these products and that Ansell and Becton manufacture latex 
gloves.
            
Owens rejected offers of defense and indemnity from both Ansell and 
Becton and chose instead to hire outside counsel. In March 2000, Owens requested 
that Ansell, Becton, and eleven other latex glove manufacturers defend it 
pursuant to Section 82.002 of the Texas Civil Practice and Remedies Code. Ansell responded with an offer to defend Owens. The 
offer limited Ansell’s defense to gloves it manufactured, and Owens rejected it. 
Becton had made a similar offer to defend Owens in a latex glove case in July 
1995. The offer said that Becton would “defend, indemnify and hold harmless” 
Owens against claims involving gloves it manufactured until it was 
determined that the plaintiff was not exposed to its gloves. Owens likewise 
declined Becton’s offer. Four years later, Becton made a second offer to “defend 
and indemnify” Owens in all latex glove cases on the same terms as the original 
offer. But Owens again rejected Becton’s offer.
            
On May 3, 2000, the underlying case was removed to the United States 
District Court for the Southern District of Texas, which transferred the case to 
the United States District Court for the Eastern District of Pennsylvania as 
part of a broader multi-district litigation process. Because the plaintiffs were 
unable to show that Owens sold any of the latex gloves that allegedly injured 
Burden, they nonsuited their claims against Owens. The case was then returned to 
the original federal district court in Texas, and thereafter the plaintiffs 
voluntarily dismissed the case against all defendants for the same or similar 
reasons. No court found any party acted negligently or caused Burden’s alleged 
injuries. Owens filed cross-claims for indemnity against Ansell, Becton, Johnson 
& Johnson Medical, Inc., and Smith & Nephew, Inc. Owens eventually 
settled with Johnson & Johnson and Smith & Newphew, but it did not settle with Ansell or Becton. Ansell 
and Becton moved for summary judgment on the adequacy of their offers to defend 
and indemnify Owens. The district court granted the motion and terminated the 
case, holding that Ansell and Becton had satisfied the Section 82.002 
requirements when they offered to defend Owens against all claims involving 
their own products. Burden v. Johnson & Johnson Med., 
Inc., 332 F. Supp. 2d 1023, 1029 (S.D. Tex. 2004). Owens appealed to 
the United States Court of Appeals for the Fifth Circuit, which in turn 
certified to this Court the question before us. Burden, 447 F.3d at 375.
Analysis
            
Our focus when construing a statute is the intent of the Legislature. 
City of LaPorte v. Barfield, 898 S.W.2d 288, 292 
(Tex. 
1995). To give effect to the Legislature’s intent, we rely on “the plain 
and common meaning of the statute’s words.” Liberty Mut. Ins. Co. v. Garrison Contractors, Inc., 966 S.W.2d 482, 484 (Tex. 
1998). “[I]t is a fair assumption that the Legislature tries 
to say what it means, and therefore the words it chooses should be the surest 
guide to legislative intent.” Fitzgerald v. Advanced Spine Sys., Inc., 996 S.W.2d 864, 866 (Tex. 1999).
            
At common law, a seller was not entitled 
to indemnification from a manufacturer unless and until there was a judicial 
finding of negligence on the part of the manufacturer. Humana Hosp. Corp. v. Am. Med. Sys., Inc., 785 S.W.2d 144, 
145 (Tex. 
1990). In 1993, the Texas Legislature supplemented the common law 
by enacting Section 82.002,[1] which allows an innocent seller to seek 
indemnification from the manufacturer of an allegedly defective product. Act of Feb. 23, 1993, 73d Leg., R.S., ch. 
5, § 1, 1993 Tex. Gen. Laws 13, 13; Tex. Civ. Prac. & Rem. Code § 82.002(a); see also Fitzgerald, 996 S.W.2d at 
866 (“The duty [to indemnify] is a new, distinct statutory duty . . . .”). 
Thus, under Section 82.002, the manufacturer is now liable to the seller 
regardless of how the injury action is resolved. § 82.002(e)(1). The manufacturer’s duty begins when it is given notice 
that a seller has been sued. See Meritor Auto., Inc. v. Ruan Leasing Co., 44 S.W.3d 86, 89 (Tex. 2001) (stating that 
the plaintiff’s pleadings are sufficient to invoke the manufacturer’s duty under 
Section 82.002).
            
Owens argues that Section 82.002 requires manufacturers to indemnify and 
hold harmless innocent sellers from all losses arising out of a products 
liability action. Owens thus contends that it may impose liability upon any 
manufacturer for Owens’s costs in defending a products liability action, even 
one that did not make the product. Owens argues that once this indemnity 
liability is placed on a manufacturer, it then falls to the manufacturer to seek 
contribution from other responsible parties. Ansell and Becton, on the other 
hand, contend that Section 82.002 requires a manufacturer to indemnify a seller 
only for claims related to the sale of that manufacturer’s product.
            
Owens points to our decisions in Fitzgerald v. Advanced Spine Systems, 
Inc., 996 S.W.2d 864, and Meritor Automotive, Inc. v. Ruan Leasing Co., 44 
S.W.3d 86, as supporting its position that a manufacturer’s Section 
82.002 obligation is not limited to defense or indemnification costs with 
respect to its own products alone. In Fitzgerald, the issue was whether 
manufacturers owe indemnification under Section 82.002 to sellers who are not in 
the chain of distribution. 996 S.W.2d at 865. We held 
that the statute requires manufacturers to 
indemnify a seller even if the seller did not sell the manufacturer’s product. 
Id. 
at 869. In Meritor, we again refused to limit the 
indemnity obligation by holding that Section 82.002(a)’s exception to a 
manufacturer’s general indemnity obligation is established only by a finding 
that a seller’s independent conduct caused the plaintiff’s injury. 44 S.W.3d at 88–91. Until such a finding is made, a mere 
allegation of negligence in the plaintiff’s pleadings is sufficient to invoke 
the manufacturer’s duty to indemnify the seller for all theories properly joined 
to a products liability claim. Id.
            
But our holdings in Fitzgerald and Meritor do little to 
support Owens’s interpretation of Section 82.002. First, whereas Fitzgerald 
involved the issue of to whom a manufacturer owes indemnification, 996 
S.W.2d at 865, this case concerns the scope of that duty of indemnification. 
Second, we held in Meritor that “the manufacturer’s duty to 
indemnify the seller is invoked by the plaintiff’s pleadings and joinder of the seller as defendant.” 44 S.W.3d at 91; see 
also Gen. Motors Corp. v. Hudiburg Chevrolet, Inc., 199 S.W.3d 249, 256 
(Tex. 2006) 
(“The duty to indemnify is triggered by the injured claimant’s pleadings.”). 
Citing Meritor, Owens argues that the plaintiffs’ broad, 
industry-wide allegations in their pleadings triggered an independent duty of 
indemnification by each of the companies that manufacture the latex gloves sold 
by Owens. But, while it is correct that the claimant’s petition triggers each 
manufacturer’s duty to indemnify an innocent seller under Section 82.002, the 
petition does not define the scope of that duty. Rather, to determine the scope 
of the duty, we must turn to the text of the statute itself.
            
The essence of Owens’s argument is that, because Section 82.002(a) 
requires a manufacturer to hold an innocent seller “harmless,” Ansell’s and 
Becton’s respective offers to defend and indemnify Owens only for claims against 
products each released into the stream of commerce did not go far enough. 
Instead, Owens contends that a manufacturer must indemnify a seller for all 
costs related to the entire products liability action. The only exception listed 
in the statute, Owens points out, is for “any loss caused by the seller’s 
negligence, intentional misconduct, or other act or omission” resulting in the 
seller’s independent liability. Owens correctly recognizes that the lone 
exception does not apply to this case.
            
But it is unmistakable that the duty under Section 82.002 is premised on 
a nexus between a given manufacturer and its product. This nexus is inherent in 
the statute that requires a “manufacturer” to hold a seller harmless against 
loss arising out of a products liability action. Tex. Civ. Prac. & Rem. 
Code § 82.002(a). 
Section 82.001(4) defines the term “manufacturer” for purposes of chapter 82 as 
“a person who is a designer, formulator, constructor, rebuilder, fabricator, 
producer, compounder, processor, or assembler of any product or any component 
part thereof and who places the product or any component thereof in the stream 
of commerce.” Id. § 
82.001(4). Thus, Ansell and Becton can be “manufacturers” under Section 
82.002 only with respect to their own products.[2]
            
On at least two prior occasions, we have implied that requiring a 
manufacturer to defend or indemnify a seller against claims related to the 
products of its competitors is an absurd result that cannot have been the intent 
of the Legislature. First, we touched on this issue in Fitzgerald when 
responding to the dissent:
 
The 
dissenting opinion contends that a literal reading of the statute would permit a 
seller to obtain indemnity from “every other manufacturer sued,” not just the 
manufacturer whose product the seller sold. Our construction of the plain 
language of section 82.002(a) must avoid absurd results if the language will 
allow.
 
 
996 S.W.2d at 867. However, because the plaintiff in 
Fitzgerald did not sue multiple manufacturers, the Court did not reach 
the issue. Id. 
at 865, 867. Second, Hudiburg concerned the statutory duty of 
a component-part manufacturer to indemnify a seller. 199 
S.W.3d at 253–54. In our decision construing the manufacturer’s duty to 
indemnify under Section 82.002, we stated that “the claimant’s pleadings must 
fairly allege a defect in the component itself, not merely a defect in the 
seller’s product of which the component was part.” Id. 
at 257. While this case does not involve the duty of a manufacturer 
of component parts, the principle we applied in Hudiburg remains the 
same. There is no substantive difference between the position of the 
component-part manufacturer in Hudiburg and the position of Ansell and 
Becton in this case. In either case, the pleadings must properly allege that the 
named defendant is a manufacturer of the product under the statutory definition 
to establish a nexus between the defendant manufacturer and the product, and 
thus trigger the protection of the statute. In both instances, it would be 
contrary to the Legislature’s intent to require a defendant to indemnify a 
seller for claims regarding products the defendant never manufactured.
            
At common law, the manufacturer was required to indemnify the seller only 
for claims involving defects in its own products. See Restatement (Third) of Torts: Apportionment of 
Liability § 22 cmt. c, illus. 1 (2000) (stating 
that, where no contractual indemnity exists, the seller of a defective product 
is not entitled to indemnity from the manufacturer if the seller is unable to 
prove that the manufacturer placed the defective product into the stream of 
commerce and therefore would itself have been liable to the injured third 
party). The rationale behind the common law concept of indemnification is that a 
party exposed to liability solely due to the wrongful act of another should be 
permitted to recover from the wrongdoer. In other words, the theory is that 
“[e]veryone is deemed responsible for the consequences 
of his or her own acts.” Muldowney v. Weatherking Prods., Inc., 509 A.2d 441, 443 (R.I. 
1986). Accordingly, a wide array of courts have held that, absent 
statutory language or an indemnification contract to the contrary, an innocent 
seller can recover its attorney’s fees under the common law from a manufacturer 
only if the manufacturer
“was or would have been liable in the products liability suit.”[3] While these cases dealt specifically with 
the manufacturer’s liability for attorney’s fees incurred by the supplier in 
defending claims involving the manufacturer’s products, the concept is equally 
applicable to other fees and costs incurred by the seller in defending such 
claims. Thus, courts have concluded that the manufacturer is liable for the 
supplier’s legal expenses in defending strict liability and negligence claims 
only when the supplier occupied a place in the stream of commerce between the 
manufacturer and the injured third party. See, 
e.g., Palmer v. Hobart Corp., 849 S.W.2d 135, 144 (Mo. Ct. App. 1993) 
(citing Hanover Ltd., 758 P.2d at 447). In this case, however, 
Owens asserts a right to indemnity under Section 82.002 from Ansell and Becton 
for liability it incurred as a result of its place in the stream of commerce 
between other manufacturers and the injured third party.
            
In the absence of language indicating that the Legislature intended for 
one manufacturer to hold an innocent seller harmless for losses caused by 
products made by another manufacturer, we decline to assign such broad 
liability. Doing so would lead to absurdities and inequities the Legislature 
certainly did not intend. See C & H Nationwide, Inc. v. Thompson, 903 
S.W.2d 315, 322 n.5 (Tex. 1994) (“Statutory provisions will not be so construed 
or interpreted as to lead to absurd conclusions . . . if the provision is 
subject to another, more reasonable construction or interpretation.”). 
For example, Owens’s interpretation of the scope of Section 82.002’s duty to 
indemnify could result in manufacturers such as Ansell and Becton being placed 
in the awkward, if not impossible, position of defending someone else for 
injuries caused by products they did not make. It is one thing to have to defend 
a seller who has marketed your product and whose defense would therefore mirror 
your own. But it is quite another to have to defend a seller who marketed your 
competitors’ products rather than your own, and on top of that try to defend 
that seller against allegations that your competitors’ products were defective 
in manufacture or marketing. While the seller’s interest might be served in 
either case, it is clearly not in the competing manufacturer’s interest that one 
of its rivals is handed the task of defending its product. It is highly 
unlikely, for example, that a competing manufacturer would be willing to share 
its intellectual property with the indemnifying manufacturer, but absent that 
discovery, the defense of the seller might be problematic. Moreover, a 
manufacturer’s ability to insure its indemnity obligation would be extremely 
impaired if its potential exposure was linked to some 
other manufacturer’s product. For these reasons, a manufacturer’s indemnity 
obligation only makes sense when its own product is implicated. While we 
acknowledged in Fitzgerald that Section 82.002 gives preference to 
innocent sellers, we also noted that it was designed to protect manufacturers. 
996 S.W.2d at 868–69. It protects manufacturers by 
“establishing uniform rules of liability” so they can “make informed business 
decisions,” such as gauging exposure to liability and obtaining liability 
insurance. Id.
            
In 1967, our decision in McKisson v. Sales Affiliates, Inc. established 
a party’s strict liability for manufacturing or selling any type of defective 
product. 416 S.W.2d 787, 789 (Tex. 1967). As Owens points out, 
Section 82.002 was designed to remedy the fundamental unfairness inherent in a 
scheme that holds an innocent seller liable for defective products manufactured 
by another by requiring the manufacturer to indemnify the seller unless the 
seller is independently liable for negligence, intentional misconduct, or any 
other act or omission. Tex. Civ. Prac. 
& Rem. Code § 
82.002(a). Yet Owens argues that limiting the 
manufacturer’s obligation under Section 82.002(a) to products the manufacturer 
placed in the stream of commerce returns the seller to an unfair position by 
requiring it to defend claims relating to another company’s products if that 
company refuses to provide a defense. In this sense, Owens contends, an innocent 
seller may be left in the same disadvantaged position Ansell and Becton seek to 
avoid (i.e., defending a product it did not manufacture). Because we recognized 
in Fitzgerald that Section 82.002 was designed to protect innocent 
sellers above all, see 996 S.W.2d at 869, Owens argues its formulation of 
Section 82.002 should prevail.
            
But Owens’s argument is unconvincing for three reasons. First, the 
Legislature’s intent that an innocent seller be held harmless is satisfied under 
Ansell’s and Becton’s construction of Section 82.002 because a manufacturer 
would either defend against claims relating to its own products or would later 
indemnify the seller. § 82.002(a). To invoke the manufacturer’s obligation under 
Section 82.002(a), the seller must pursue 
its rights under the statute from each manufacturer by giving “reasonable notice 
to the manufacturer.” Id. § 
82.002(f). Should the seller be faced 
with a recalcitrant manufacturer, it is entitled to recover its costs incurred 
enforcing its indemnity rights. Id. § 
82.002(g).[4] Second, in the event a seller ends up 
defending a manufacturer’s products itself and thereafter seeks indemnity from 
the manufacturer, the seller’s position is more favorable than that of the 
manufacturer forced to defend products produced by a competing manufacturer. In 
the former scenario, the seller, by virtue of its intermediary position in the 
stream of commerce, has a business relationship with the manufacturer of the 
product it sells. It stands to reason that such a pre-existing business 
relationship is more likely to facilitate the sharing of proprietary information 
that is necessary for a thorough products liability defense. Finally, we find 
useful the Utah Supreme Court’s analysis in deciding an indemnification case 
involving two innocent parties. In Bettilyon 
Construction Co. v. State Road Commission, a road contractor sued the State 
Road Commission of Utah to recover legal expenses the contractor had incurred in 
connection with its successful defense of a lawsuit brought against it by a 
property owner whose land abutted a road construction project. 437 P.2d 449, 449–50 (Utah 1968). To facilitate the project, 
the road commission had leased a right of way to the contractor. 
Id. 
at 449. The property owner alleged the right of way encroached on his 
property. Id. In holding that the contractor was 
not entitled to common law or contractual indemnity from the road commission for 
its legal expenses, the Utah Supreme Court reasoned:
 
One 
of the hazards of life which everyone is exposed to is the possibility of being 
required to defend a lawsuit. . . . But the fact that the party charged may be 
innocent of the claimed wrong and can successfully defend against such a suit 
does not entitle him to pass the burden on the [sic] some equally innocent third 
party.
 
Id. at 
450. Here, as well, there is no basis for extending Ansell’s and Becton’s 
obligations under Section 82.002 to claims involving another manufacturer’s 
products.
            
Owens argues that interpreting Section 
82.002 in this manner reverts to the common law by reinserting a “chain of 
distribution” requirement. But we conclude that the Legislature never altered 
this portion of the common law.[5] The Legislature specifically incorporated 
that requirement into the statute by defining a manufacturer as a person who 
“places the product or any component part thereof in the stream of 
commerce.” Tex. Civ. Prac. & Rem. Code § 
82.001(4). If the Legislature intended to change the common 
law by establishing liability for another manufacturer’s product, it would have 
done so expressly.[6]
Conclusion
            
The Fifth Circuit asks whether a manufacturer can fulfill its indemnity 
obligations under Section 82.002 when the manufacturer offered to indemnify and 
defend an innocent seller only for claims related to the sale of products the 
manufacturer released into the stream of commerce. We conclude that the statute 
does not extend a manufacturer’s obligations under Section 82.002 to claims 
related to the sale of other manufacturers’ products. When an innocent seller is 
forced to defend itself in a products liability action, its remedy under the 
statute is to seek indemnity from the product manufacturer. But where the 
plaintiff has sued multiple manufacturers, the statute does not authorize a 
seller to simply select one or more manufacturers and thereby obligate the 
chosen manufacturers to fully indemnify the seller’s costs regardless of whether 
any connection to the product at issue exists. Rather, the product manufacturers 
satisfy their statutory duty to the seller by offering to indemnify and defend 
it only for any costs associated with their own products. And if, as in this 
case, there is no finding as to which manufacturer, if any, is liable for the 
plaintiff’s injury, the innocent seller, like an innocent manufacturer, must 
assume responsibility for recovering the costs of its own defense. Our 
interpretation of the scope of a manufacturer’s obligation under Section 82.002 
comports with the Legislature’s intent, as indicated by the plain language of 
the statute, the policy behind it, and its practical application. Accordingly, 
Ansell and Becton are not required to indemnify and defend Owens against all 
claims relating to all products. 
 
            
___________________________
            
PAUL W. GREEN
            
JUSTICE
 
 
OPINION DELIVERED: March 28, 
2008







[1] 
Section 82.002 provides:
 
(a) A manufacturer shall indemnify and hold harmless a 
seller against loss arising out of a products liability action, except for any 
loss caused by the seller’s negligence, intentional misconduct, or other act or 
omission, such as negligently modifying or altering the product, for which the 
seller is independently liable.
                
    (b) For purposes of this section, “loss” includes 
court costs and other reasonable expenses, reasonable attorney fees, and any 
reasonable damages.
 
(c) Damages awarded by the trier of fact shall, on final judgment, be deemed reasonable 
for purposes of this section.
 
(d) For purposes of this section, a wholesale 
distributor or retail seller who completely or partially assembles a product in 
accordance with the manufacturer’s instructions shall be considered a 
seller.
 
(e) The duty to indemnify under this section:
 
(1) applies without regard to 
the manner in which the action is concluded; and
 
(2) is in addition to any duty 
to indemnify established by law, contract, or otherwise.
                
    (f) A seller eligible for indemnification under this 
section shall give reasonable notice to the manufacturer of a product claimed in 
a petition or complaint to be defective, unless the manufacturer has been served 
as a party or otherwise has actual notice of the action.
                
    (g) A seller is entitled to recover from the 
manufacturer court costs and other reasonable expenses, reasonable attorney 
fees, and any reasonable damages incurred by the seller to enforce the seller’s 
right to indemnification under this section.
 
Tex. Civ. Prac. & Rem. Code § 
82.002.

[2] 
The plaintiffs in this case alleged that Ms. Burden’s allergic reaction was 
caused by the latex protein inherent in all rubber latex gloves, but the 
manufacturers argued during discovery that not all latex gloves contain equal 
amounts of latex protein. Owens contends that the plaintiffs’ petition merely 
alleged that latex gloves are defective and did not segregate any manufacturer’s 
product from any other, but it does not deny that different manufacturers 
produce gloves containing different amounts of latex protein. However, 
regardless of whether one manufacturer’s gloves are distinguishable from the 
gloves of another, for the reasons stated herein, we do not construe Section 
82.002 to require a manufacturer to indemnify a seller for claims relating to 
products it did not produce. 

[3] 
1 Robert L. Rossi, Attorney’s Fees § 8:4 (3d ed. & Supp. 2006) 
(citing Safeway Rental & Sales Co. v. Albina 
Engine & Mach. Works, Inc., 343 F.2d 129 (10th Cir. 1965); Merck 
& Co. v. Knox Glass, Inc., 328 F. Supp. 374, 376–78 (E.D. Pa. 1971); 
D.G. Shelter Prods. Co. v. Moduline Indus., Inc., 684 
P.2d 839, 841 (Alaska 1984); Trails Trucking, Inc. v. 
Bendix-Westinghouse Auto. Air 
Brake Co., 108 Cal. Rptr. 30, 34 
(Cal. Ct. App. 1973); Maple Chair Co. v. W. S. Badcock Corp., 385 
So. 2d 1036, 1038 (Fla. Dist. Ct. App. 
1980); Rauch v. Senecal, 112 N.W.2d 886, 888 
(Iowa 1962); 
Cent. Motor Parts Corp. v. E.I. duPont de Nemours & Co., 596 A.2d 759, 761–62 (N.J. Super. 
Ct. App. Div. 1991); Krasny-Kaplan Corp. v. 
Flo-Tork, Inc., 609 N.E.2d 152, 154 (Ohio 1993); 
Kamyr, Inc. v. Boise Cascade Corp., 519 
P.2d 1031, 1032–34 (Or. 1974); Hanover Ltd. v. Cessna Aircraft Co., 758 
P.2d 443, 448 (Utah Ct. App. 1988); Thomas Malia, 
Annotation, Attorneys Fees in Products Liability, 53 A.L.R. 4th 414 § 19 (1987)).

[4] 
The dissent claims that in cases such as this, where no determination was made 
as to which product was at fault, the Legislature intended for the 
manufacturers, not the seller, to bear the burden of determining how the parties 
should distribute the costs of providing the seller with indemnity. ___ S.W.3d at ___. But Section 82.002(g) specifically 
entitles the seller to recover costs incurred in enforcing his indemnity rights. 
If, as the dissent maintains, the burden should fall to a manufacturer to seek 
contribution from other manufacturers, then Section 82.002(g) would have 
provided that manufacturers as well as sellers could recover such 
costs.

[5] 
The dissent suggests that today’s holding 
results in the Court reading the phrase “plac[es] [the] product . . . in the stream of commerce” 
differently in the definitions of manufacturer and seller. ___ 
S.W.3d at ___. In Fitzgerald, we held that Section 82.002 does not 
require a seller to be proven to have been in the chain of distribution for the 
product at issue. 996 S.W.2d at 867. But the 
question in this case is not whether the seller stood in the chain of 
distribution. Instead, our decision in this case concerns only the legal 
question of whether a manufacturer’s defense or indemnity obligation in Section 
82.002 extends beyond its own products.

[6] 
The dissent asserts that our holding “creates an exception to the indemnity 
obligation that does not exist in the text.” ___S.W.3d at 
___. We disagree. We merely recognize the scope of indemnity obligation 
imposed by the Legislature. Under the statute, an innocent seller is guaranteed 
indemnity from any person who qualifies as a manufacturer under Section 
82.001(4). Naming a party as a manufacturer in a lawsuit does not automatically 
trigger an unlimited indemnity obligation under Section 82.002. A party’s 
indemnity obligation is limited by the definition of manufacturer, which relates 
specifically to a person’s own products that have been placed in the stream of 
commerce.